# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CASCADES AV LLC<br><br>Plaintiff,<br><br>vs.<br><br>EVERTZ MICROSYSTEMS, LTD.<br><br>Defendant. | Civil Action No. 1:17−cv−07881<br><br>Honorable Thomas M. Durkin |

### CASCADES AV'S SURREPLY IN FURTHER OPPOSITION TO EVERTZ'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

Cascades AV ("Cascades") respectfully submits this short Surreply to address a few (not all) of the misleading new arguments and erroneous statements of law within Evertz Microsystems' ("Evertz's") Reply. This Surreply is not intended to address the unnecessarily acrid tone within all of Evertz's moving papers, nor the false remarks made about the inventor, Mr. Cooper. Mr. Cooper does not manage, control, nor own any interest in, Cascades AV.

Evertz effectively argues that covenant-not-to-sue recipients under particular patents need never face infringement assertions under any "progeny" patent thereafter. Evertz's Reply uses the adjective "progeny" 27 times to label the relationship between the patents-in-suit and Mr. Cooper's '295 patent (the relevant "existing patent" as of 2008). If Evertz were right, the Federal Circuit's trio of "implied license by legal estoppel" cases (*TransCore*, *General Protecht*, *Endo*) would each have been far shorter than they are. Each decision would only have asked, "is the patent-in-suit a progeny of a licensed patent or not?" But each instead addressed particular factors leading to its outcome. In the case of *TransCore* and *General Protecht*, these factors led to a ruling that the patentee "derogated" from prior license rights in suing. In the case of *Endo*, these factors led to a ruling of no "derogation." In short, bestowing the talismanic label "progeny" on the patents-in-suit does not automatically immunize Evertz's infringement.

Evertz ignores the most important necessary factor leading to the *TransCore* and *General Protecht* outcomes. Those decisions involved a plaintiff suing a second time against *the same product*. Cascades cited this distinction. (Dkt. No. 21, at 9-11, 12 nn. 4-5 and 14). Yet Evertz does not reply. Nowhere in the Reply does Evertz acknowledge (much less distinguish) this controlling and distinguishing fact in its authorities. Critically, Evertz does not dispute that the INTELLITRAK products were *not* involved in the prior 2007 patent assertions. Nor could it, since INTELLITRAK did not yet exist.

1

Evertz also fails in its effort to distract from the other primary distinguishing factor that Cascades showed within its implied license authorities. (Dkt. No. 21, at 1-3, 13). The actual wording of the Mutual Release evidences the parties' intentions *not* to include "divisional" patents in the rights granted under paragraph 4. *See EL Educ., Inc. v. Pub. Consulting Grp., Inc.*, No. 15-CV-9060, 2016 U.S. Dist. LEXIS 133650, at *15 (S.D.N.Y. Sept. 23, 2016) ("Particularly applicable here is the doctrine that where sophisticated drafters omit a term from a contract, 'the inescapable conclusion is that the parties intended the omission.'") (quoting authority invoking *expressio unius* maxim, rejecting copyright "implied license" on this ground); *Colfin Bulls Funding A, LLC v. DH Mortg. Holder, LLC*, 15 C 11065, 2016 U.S. Dist. LEXIS 55724, at *10-11 (N.D. Ill. Apr. 26, 2016) ("[T]erms omitted from a contract should be treated as having been omitted intentionally. . . ."). A patent means a patent; it does not mean a "patent family" or its "progeny," and it does not mean future "divisional" patents. Evertz had sophisticated counsel who understood the meaning of these terms and used them in other contracts. Contract law holds that their omission from the Mutual Release was intentional.

Evertz in its Reply responds only by pointing to other sections in the relevant contracts. (Dkt. No. 25, at 7). This tactic does not contradict Cascades' point. Evertz similarly tries to point to language in *TransCore* that wording calling out no delivery of rights under future-issuing patents did not, on the facts of that case, defeat the presence of an implied license. (Dkt. No. 25, at 11). But Evertz overlooks that Cascades already distinguished that part of *TransCore*. Cascades pointed to clarifying holdings in the later *General Protecht* and *Endo* decisions that confirm that parties like Evertz are, in fact, "free to contract around an interpretive presumption," and that one way they do so is to include a laundry list of patent relatedness-types in the language of the overall transaction omitting the type of relatedness that the patent-in-suit has.

2

(Dkt. No. 21, at 12 n.5, quoting *General Protecht* and citing *Endo*). Even under the facts in *TransCore*, the Court only downplayed the "no future rights" wording in the unusual context of a patentee suing against the same product as before. Evertz agrees that this is not the situation here.

Regarding its express license argument, Evertz misstates fundamental patent law when trying to undermine Cascades' showing that paragraph 4 can be broader than paragraph 2, without granting Evertz the express-license scope that it now wants. Evertz states that claims for correction of inventorship (35 U.S.C. § 256) or claims of "interfering" or "derived" patents (35 U.S.C. § 291) "are claims that would be brought *against* a patentee and not *by* a patentee. Therefore they cannot support Cascades' argument, because they are not the type of claims that anyone would pay Cooper/Cascades to release or covenant not to bring." (Dkt. No. 25, at 6, emphasis in original). Evertz is wrong. Claims under Sections 256 and 291 are commonly brought "*by* a patentee." *See, e.g., Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997) (patentee inventorship action); *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291 (Fed. Cir. 2011) (patentee interference action). Evertz thus received value for covenants that reach these types of claims.

Finally, Evertz misunderstands *Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 Fed. Appx 29 (Fed. Cir. 2014). Evertz states that *Diversified* turned on whether a patent was "progeny" of another. (Dkt. No. 25, at 4-5). But *Diversified* actually held that "relatedness" between a licensed patent and the patent-in-suit was an "erroneous focus" when analyzing "arising out of" covenant language. *Id.* at 32. *Diversified* rejects Evertz's "progeny" reliance.

For these and the reasons stated in Cascades' previous opposition (Dkt. No. 21), the Court should deny Evertz's motion to dismiss in its entirety.

Dated: February 15, 2018	Respectfully submitted,

/s/ Robert P. Greenspoon
Robert P. Greenspoon (rpg@fg-law.com)
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Ave., Suite 2700
Chicago, Illinois 60601
(Tel.): 312-551-9500
(Fax): 312-551-9501
*Attorneys for Plaintiff, Cascades AV, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that service of the foregoing document was made on all counsel of record on February 15, 2018 *via* the court's CM/ECF system.

/s/ Robert P. Greenspoon
Robert P. Greenspoon
