UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASCADES AV LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 7881 |
| v. | ) |
| | ) Judge Thomas M. Durkin |
| EVERTZ MICROSYSTEMS LTD, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Cascades AV LLC sued defendant Evertz Microsystems LTD for allegedly infringing three of Cascades's patents covering improvements in detecting and correcting the processing delay of a signal that has become unsynchronized with related signals (*i.e.*, correcting "lip sync error"). Evertz moves to dismiss Cascades's complaint under Fed. R. Civ. P. 12(b)(6), maintaining that Cascades's patent infringement claims fail as a matter of law because Evertz has a license—either express or implied—to practice the patents-in-suit. R. 18. For the following reasons, the Court denies Evertz's motion.

**Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

James Carl Cooper—Cascades's predecessor in interest—has invented more than 80 patents in the field of audio and video technology. R. 1 ¶ 1. Evertz is a competitor in that field who has at least one of its own patents. *See id.* ¶¶ 13-14. In 2007 and 2008, Evertz entered into three agreements with Cooper and two related licensing entities to settle a prior infringement dispute involving "a different family of [Cooper] patents" than the patents at issue in this case. *See id.* ¶¶ 7, 8.

The key agreement for purposes of this motion to dismiss is a Mutual Release and Covenant Not to Sue that Cooper and Evertz entered into on March 10, 2008

("the Cooper Agreement"). R. 1-1. The Cooper Agreement binds third-parties to whom "Cooper assigns or licenses any of the Cooper Patents." R. 1-1 ¶ 9. The Cooper Agreement contains two provisions central to Evertz's motion to dismiss. The first is a release in paragraph 2:

> 2. Cooper hereby releases Evertz with respect to any and all claims that he could have brought in any proceeding against Evertz for infringement of any existing patent presently or formerly owned or controlled by him or by any company owned or controlled by him or that might hereafter revert to him ("Cooper Patent"), with respect to any past, present or future products, methods, services, or systems of Evertz that previously, currently, or in the future are made, used, sold, offered for sale, imported or exported by Evertz.

*Id.* ¶ 2. The second is a covenant in paragraph 4:

> 4. Cooper hereby covenants that neither he nor any company owned or controlled by him will bring suit, initiate any proceeding or otherwise assert any claim, assist voluntarily in the prosecution of any claim, or receive or direct to any third party any payments arising from the prosecution or settlement of any claim, apart from payments arising from the Licensing Agreements, against Evertz or its affiliates or its affiliates, customers, distributors, resellers, OEMs or end-users of its past or current products, methods, services or systems before any court or administrative agency in any country in the world, based upon or arising out of any Cooper Patent.

*Id.* ¶ 4. Reading these provisions together, in paragraph 4 Cooper covenants not to bring lawsuits "based upon or arising out of any Cooper Patent," and "Cooper Patent" is defined in paragraph 2 as "any existing patent" meeting certain criteria.

Around the same time Evertz and Cooper entered into the Cooper Agreement, Evertz also entered into license agreements with two related parties: Technology Licensing Company ("TLC") and IP Innovation. In those agreements, unlike in the Cooper Agreement, the license is explicitly defined to cover not only

3

existing patents, but "any related [patent] applications or patents," including "divisionals." *See* R. 21-1 ¶ 1.d (Evertz's agreement with TLC stating: "'Cooper Synch Stripper Patents' means, collectively, i. United States Patent No. 5,754,250 . . . ii. United States Patent No 5,488,869 . . . and iii. any related applications or patents obtained by TLC, or any successors-in-interest or assigns, via any foreign or domestic continuations, continuations-in-part, divisionals, reissues, or reexaminations of the '250 or '869 patents"); R. 21-2 ¶ 1.d (Evertz's agreement with IP Innovation stating: "'Cooper Patents' means, collectively, i. United States Patent No. 5,424,780 . . . [other specifically listed patents] . . . x. and any related applications or patents obtained by Patentees, or any successors-in-interest or assigns, via any foreign or domestic continuations, continuations-in-part, divisionals, reissues or reexaminations of the [listed] patents").[1]

In February 2009, eleven months after signing the Cooper Agreement, Evertz launched its IntelliTrak product line—the accused products in this case—that "monitor lip sync information for excessive errors." R. 1 ¶¶ 5-6, 35. Several years later, in 2014, Cooper formed Cascades "to help . . . Cooper benefit from the licensing of his lip sync error correction inventions." *Id.* ¶¶ 1, 15. Between August 2014 and June 2017, Cascades obtained the three patents designed to correct lip sync error at issue in this case: U.S. Patent Nos. 8,810,659 ("the '659 patent"), 9,071,723 ("the '723 patent"), and 9,692,945 ("the '945 patent") ("patents-in-suit"). R.

---

[1] The Court may consider these agreements because they are referred to in the complaint (R. 1 ¶ 8). *E.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

4

20-1.[2] These patents were based on divisional applications from prior Cooper patents, which means applications for an "independent or distinct invention, carved out of a nonprovisional application." MPEP § 201.06. "[T]he disclosure presented in a divisional application must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application." *Id*. The three patents-in-suit all claim priority to a parent patent issued to Cooper in 2004: U.S. Patent No. 6,836,295 ("the '295 patent"). R. 20-1 at 8, 22, 42.

Beginning in 2014, Cascades tried to engage Evertz in licensing discussions related to Evertz's IntelliTrak products, invoking the patents-in-suit and related patents. R. 1-1 ¶¶ 15-34. But Evertz declined to negotiate licenses, citing the release in the Cooper Agreement. *Id*. ¶¶ 16-34. Evertz ignored many of Cascades's follow up communications. *Id*. ¶¶ 18-34. In November 2017, Cascades filed this lawsuit asserting that the IntelliTrak products infringe on the patents-in-suit. *Id*. ¶¶ 37-77.

## Discussion

It is undisputed that the three patents-in-suit related to correcting lip sync error did not exist as of March 10, 2008 when Cooper signed the Cooper Agreement promising not to sue Evertz based on existing patents. Evertz has two theories as to why the Cooper Agreement nevertheless bars Cascades's infringement allegations. The first is that Evertz has an express license to practice the patents-in-suit

---

[2] Although these patents are not attached to the complaint, "it is . . . well-established that a court may take judicial notice of patents or patent applications." *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014).

because the covenant not to sue[3] in the Cooper Agreement by its terms covers "not only . . . the specific patent families at issue in the prior dispute," but "*Cooper's entire patent portfolio.*" R. 20 at 3 (emphasis in original). The second is that Evertz has an implied license to practice the patents-in-suit because to hold otherwise would deprive Evertz of the full benefit of its bargain with Cooper. The Court addresses each theory in turn.

I.   **Express License**

Evertz first argues that it has an express license to practice the patents-in-suit based on the unambiguous language of the Cooper Agreement. Under Illinois law, which the parties agree governs this dispute, "[i]f the language of a contract is facially unambiguous, [the Court] interpret[s] both its meaning and the intent of the parties as a matter of law, solely from the contract itself, without resorting to extrinsic evidence." *Morningside N. Apts. I, LLC v. 1000 N. LaSalle, LLC*, 75 N.E.3d 413, 419 (Ill. App. Ct. 2017). Both parties agree that the Cooper Agreement is facially unambiguous and may be interpreted as a matter of law. But they paradoxically disagree as to what its unambiguous terms mean.

"[P]atent license agreements can be written to convey different scopes of promises not to sue, *e.g.*, a promise not to sue under a specific patent, or more broadly, a promise not to sue under any patent the licensor now has or may acquire in the future." *Endo Pharm. Inc. v. Actavis, Inc.,* 746 F.3d 1371, 1379 (Fed. Cir.

---

[3]   A covenant not to sue operates as a license. *TransCore, LP v. Elec. Transaction Consultants Corp.,* 563 F.3d 1271, 1279 (Fed. Cir. 2009) ("a non-exclusive patent license is equivalent to a covenant not to sue").

6

2014). Evertz maintains that the Cooper Agreement "applies broadly not only to Cooper's patent portfolio that existed at the time the Agreement was executed," but also to claims arising from future patents that "are progeny of . . . a Cooper Patent that existed at the time of the Agreement." R. 20 at 2. Because the three patents-in-suit are undisputedly progeny of a "Cooper Patent"—*i.e.*, the '295 patent—Evertz maintains that the Cooper Agreement expressly covers the patents-in-suit.

The problem with Evertz's argument is that "Cooper Patent" is expressly defined in the Cooper Agreement as "any *existing* patent" meeting certain conditions. R. 1-1 ¶ 2 (emphasis added). The release in paragraph 2 applies only to claims for "infringement" of an "existing patent." *Id.* And the covenant in paragraph 4 pertains to a "suit . . . against Evertz . . . based upon or arising out of any Cooper Patent"—*i.e.*, any patent existing at the time of the Agreement. *Id.* ¶ 4. It is undisputed that none of the patents-in-suit existed at the time of the Agreement.

Evertz knew how to negotiate agreements with broader scopes. Evertz's agreements with TLC and IP Innovation explicitly define the scope of covered rights to include progeny of the listed patents, including divisionals. *See* R. 21-1 ¶ 1.d.iii (covering "any related applications or patents obtained . . . via any . . . continuations, continuations-in-part, *divisionals*, reissues or reexaminations of [specified] individual patents") (emphasis added); R. 21-2 ¶ 1.d.x (same). By contrast, the Cooper Agreement covers only "existing patent[s]"; it does not define "Cooper Patent" to include not-yet-existing divisionals like the patents-in-suit. R. 1-1 ¶ 2. In other words, the Cooper Agreement contains only "a promise not to sue

7

under [ ] specific patent[s]," not "a promise not to sue under any patent the licensor now has or may acquire in the future." *Endo,* 746 F.3d at 1378.

Evertz's contrary position focuses on the "arising out of" language in paragraph 4. R. 1-1 ¶ 4. Evertz argues that "arising out of" is a broad term, and that "the claims[4] in this case [arise out of] the '295 patent, from which the Patents-in-Suit arise." R. 20 at 10. But paragraph 4 does not cover claims *arising out of patents* arising out of a Cooper Patent. It covers claims arising out of a Cooper Patent. R. 1-1 ¶ 4. And although "arising out of" is a broad term, based on its placement in the sentence, that term means that the scope of *claims* covered by the covenant is expansive. It does not mean the scope of *patents* covered by the covenant is expansive. No matter how broadly "arising out of" is construed, it does not change the undisputed fact the patents-in-suit are not themselves Cooper Patents; as such, Cascades claims here do not "aris[e] out of any Cooper Patent." *Id.*

The Federal Circuit has expressly rejected Evertz's argument when construing similar language. In *Diversified Dynamics Corp. v. Wagner Spray Tech. Corp.*, 106 F. App'x 29 (Fed. Cir. 2004), the licensor promised in a release not to sue the licensee "regarding any and all actions, claims . . . arising out of or in any way related to the '176 patent." *Id.* at 30. The licensor then sued the licensee for infringement under a different patent (the '123 patent), which was "related to," a "companion" of, and cross-referenced in, the '176 patent. *Id.* at 30-31. The Federal

---

[4] "Claim" as used in this context refers to an actual or potential cause of action, not a "claim" in a patent.

8

Circuit reversed the district court's express license finding. It explained that "[b]y concluding that [the licensor] released [the licensee] from the current suit, the [district] court erroneously prohibited actions 'arising out of or in any way related to [*a patent related to*] the '176 patent'"—*i.e.*, the district court's construction "had the erroneous effect of adding language to the contract." *Id.* at 33 (emphasis in original).[5] Just as in *Diversified*, Evertz's position violates basic principles of contract interpretation by requiring the Court to read terms that do not exist into the Cooper Agreement—*i.e.*, a "suit . . . based upon or arising out of [*any patent arising out of*] any Cooper Patent." R. 1-1 ¶ 4.

Evertz attempts to distinguish *Diversified* because in that case, the patent-in-suit was not progeny of the licensed patent—it was merely a "companion" patent. 106 F. App'x at 30. But the holding of *Diversified* did not turn on the relationship between the patent-in-suit and the licensed patent. Quite the opposite: the *Diversified* court found that the district court had "erroneously focused" on "the connection between the *patent*[-in-suit] and the [licensed] patent"; the proper focus based on the wording of the release was on "the connection between the *action* and the [licensed] patent." *Id.* at 32. Here, there is no such connection. This action undisputedly concerns patents that do not meet the definition of a Cooper Patent.

---

[5] Although *Diversified* is not "binding from a precedential standpoint," the Court finds its reasoning "helpful and instructive." *See, e.g., Cook Inc. v. Endologix, Inc.*, 2012 WL 2682749, at *6 n.3 (S.D. Ind. July 6, 2012) (finding reasoning in *Diversified* persuasive and following it); *see also* Fed. Cir. R. 32.1(d) ("The court may . . . look to a nonprecedential disposition for guidance or persuasive reasoning.").

Evertz further argues that "the Cooper Agreement as a whole" supports its reading of paragraph 4. R. 20 at 10. Specifically, Evertz argues that because paragraph 2 already covers infringement lawsuits based on existing patents, and paragraph 4 uses broader, "based upon or arising out of" language, paragraph 4 must "extend beyond claims of infringement of a specific Cooper Patent." *Id*. The only way for paragraph 4 to "extend beyond" paragraph 2, Evertz says, is for paragraph 4 to cover lawsuits arising out of Cooper patent "progeny." *Id*. But as Cascades points out, paragraph 4 can cover a broader swath of lawsuits than paragraph 2 without covering "progeny" of a Cooper Patent (a term that appears nowhere in the text of the Cooper Agreement). Lawsuits other than infringement actions could "aris[e] out of" a Cooper Patent and be covered by paragraph 4, including claims for correction of inventorship (35 U.S.C. § 256) or patent interference (35 U.S.C. § 291), which can be brought by a patentee. *See, e.g.*, *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1977) (patentee inventorship action); *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291 (Fed. Cir. 2011) (patentee interference action). Thus, paragraph 4 covers more territory than paragraph 2 without Evertz's atextual reading of paragraph 4. And, in any event, paragraph 2 is a backward-looking release, and paragraph 4 is a forward-looking covenant. Even if they cover roughly the same territory, they are not rendered redundant by Cascades's (and the Court's) reading of paragraph 4.

The Court therefore rejects Evertz's express license arguments based on the plain language of the Cooper Agreement. Like in *Endo*, Evertz "agreed to [a]

10

license[ ] that do[es] not cover the patents at issue," and "[y]ou get what you bargain for." 746 F.3d at 1378-79.[6]

## II. Implied License

Evertz alternatively argues that it has an implied license to practice the patents-in-suit based on the doctrine of legal estoppel. In support, Evertz relies on a pair of Federal Circuit cases: *TransCore,* 563 F.3d 1271, and *General Protecht Group, Inc. v. Leviton Mfg. Co., Inc.,* 651 F.3d 1355, 1361 (Fed. Cir. 2011). As the Federal Circuit explained in *TransCore*, "[l]egal estoppel refers to a narrow[ ] category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." 563 F.3d at 1279. An implied license arises because the licensor is

---

[6] The Court disagrees with Cascades alternative argument in support of its position that the Cooper Agreement does not apply to this dispute. Cascades argues that the scope of the covenant in paragraph 4 of the Cooper Agreement is limited to Evertz's "past or current products," and this case involves a future Evertz product (IntelliTrak). R. 21 at 7-8. The Court agrees with Evertz that this argument is based on a strained and incorrect reading of the Agreement. In paragraph 4, Cooper covenants not to "bring suit . . . against Evertz or its affiliates, customers, distributors, resellers, OEMs or end-users *of its past or current products* . . . based upon or arising out of any Cooper Patent." R. 1-1 ¶ 4 (emphasis added). In this sentence, the phrase "of its past or current products" modifies "end-users." The Court rejects Cascades reading of "[t]he word 'of' [to] mean[ ] 'concerning,'" such that Cooper promised not to bring suit "against Evertz concerning its past or current products." R. 21 at 8. This reading is not supported by the plain language of the Agreement. Nor is it supported by the surrounding context. Paragraph 2 instead states that Cooper's promise not to sue for infringement *does* extend to "future products" of Evertz's, so long as the infringement claim is based on an "existing patent." R. 1-1 ¶ 2. This conclusion does not, however, impact the Court's holding. Regardless of whether the Cooper Agreement applies to future Evertz products, it applies only if a suit arises from a then-"existing patent." And this suit does not arise from a then-existing patent.

estopped from "taking back in any extent that for which [it] has already received consideration." *Id.*

Here, there is no question that Cooper licensed a right to Evertz to practice the Cooper Patents, including the '295 patent, and received consideration for that right. The question is whether by asserting divisionals of the '295 patent as patents-in-suit, Cascades (as Cooper's successor-in-interest) is derogating from, or taking back part of, "that for which [Cooper] has already received consideration." *Id.*

In both *TransCore* and *General Protecht*, a licensor sued a licensee for infringement based on the same product the licensee had already licensed, but under a new patent known as a "continuation." *TransCore,* 563 F.3d at 1279-80; *General Protecht,* 651 F.3d at 1361. A continuation patent discloses the same "invention(s) disclosed in a prior-filed copending nonprovisional application." MPEP § 201.07. The Federal Circuit explained in *TransCore* that "in order for [the licensee] to obtain the benefit of its bargain with [the licensor]," "it must be permitted to practice the [continuation] patent to the same extent it may practice the [expressly licensed] patents." 563 F.3d at 1279. This was the case even though the license expressly stated that it did not apply to future patents; that language did not allow the licensor "to derogate from the rights it . . . expressly granted." *Id.* A few years later in *General Protecht*, the Federal Circuit explained that "[f]rom our holding in *TransCore* it reasonably follows that where . . . continuations issue from parent patents that previously have been licensed as to certain products, it may be

12

presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well." 651 F.3d at 1361.

*TransCore* and *General Protecht* differ from this case in two key respects: (a) both *TransCore* and *General Protecht* addressed a licensor's assertion of a patent against the same products the parties' prior license agreement was designed to cover, whereas this case involves new products that, according to Cascades's allegations, did not exist at the time of the Cooper Agreement; and (b) the patents-in-suit in both *TransCore* and *General Protecht* were continuation patents (which are "for the same invention" (*Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014)), whereas the patents-in-suit here are divisional patents (which are "for distinct inventions" (*id.*)). Evertz claims these are distinctions without a difference, and that the implied license doctrine extends to this case as a matter of law. The Court disagrees.

The Federal Circuit shed light on the reach of *TransCore* and *General Protect* in *Endo*, explaining:

> Our subsequent cases confirm the limited scope of *TransCore.* In *General Protecht Group, Inc. v. Leviton Manufacturing Co., Inc.,* we found an implied license where the asserted patents had "[t]he same inventive subject matter [as that] disclosed in the licensed patents" and "[t]he same products were accused." 651 F.3d 1355, 1361 (Fed. Cir. 2011). As in *TransCore,* the patents at issue in *General Protecht* were *continuations* of the licensed patents. See *id.* at 1360 (quoting *TransCore,* 563 F.3d at 1279-80). . . . After explaining that *TransCore* "prohibits a patent licensor from derogating from rights granted under the license," we held that "where ... *continuations issue from parent patents that previously have been licensed as to certain products,* it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well." *Id.* (emphasis added). . . . Taken together, these

13

> cases stand for the rule that a license or a covenant not to sue enumerating specific patents may legally estop the patentee from asserting *continuations* of the licensed patents in the absence of mutual intent to the contrary. *See Gen. Protecht,* 651 F.3d at 1361; *TransCore,* 563 F.3d at 1279. We reject [the] invitation to expand the implied license doctrine.

*Endo*, 746 F.3d at 1378 (emphasis in original). Applying these principles to the facts at hand, the Federal Circuit concluded that "Endo is not estopped from asserting the patents at issue in these appeals because none of the asserted patents is a continuation of any of the licensed patents." *Id.* The fact that two of the patents-in-suit "claim[ed] priority to the same provisional application as the [licensed] patent" did "not make [the patents-in-suit] continuations." *Id.* This was true despite the fact that the "very product for which [the licensee] secured licenses in its settlement agreement" was at issue in *Endo. Id.* at 1382 (Dyk, J., dissenting in part). And it was true despite the fact that the licensed patent and the patents-in-suit all "claim[ed] priority to the same provisional application, and thus, must cover the same inventive subject matter." *Id.*

Evertz ignores *Endo* in its opening brief and downplays it in its reply. And for an obvious reason. The emphasis the *Endo* court placed on the word "*continuations*" and licenses "*as to certain products*" in describing the "limited scope" of *General Protecht* and *TransCore* supports Cascades's position that in order for the implied license doctrine to apply, the patent-in-suit must be both a continuation of the licensed patent *and* cover the same product. And neither situation exists here. Although *Endo* did not address divisional patents specifically, its reasoning strongly indicates that the implied license doctrine does not extend to divisional patents for

14

distinct inventions where the allegedly infringing products are different from the products the license was designed to cover. And this makes sense. The purpose of the implied license doctrine is to allow a licensee "to obtain the benefit of its bargain" (*TransCore*, 563 F.3d at 1279) by continuing to use the product and invention it bargained to use.

Based on the facts as pleaded, Evertz did not bargain to use the "distinct invention[s]" (MPEP § 201.06) addressed by the divisional patents-in-suit that post-dated the Cooper Agreement. Nor did Evertz bargain to use the IntelliTrak products (which—accepting the allegations in the complaint as true—were not invented at the time of the Cooper Agreement) because they are covered by a patent that was not "existing" at the time. *See* R. 1-1 ¶ 2 (release of infringement actions as to products—whether past, present, or future—covered by "any existing patent").

Evertz tries to extract from *General Protecht* and *TransCore* a broader principle that the implied license doctrine applies to all "progeny of licensed patents" as a rule. R. 20 at 11-12; *see* R. 25 at 10-11. But as Cascades points out, if that were the test, the opinions in these cases would be significantly shorter. They would ask only whether the patent-in-suit is progeny of a licensed patent. Instead, these cases asked the more complicated and fact-specific question of whether the licensor sought to derogate from prior licensed rights by suing.

Evertz also emphasizes that in *General Protecht*, the Federal Circuit rejected the argument that there was no implied license because at least some claims of the continuation patents were narrower than the previously asserted claims. 651 F.3d

15

at 1361. The *General Protecht* court reasoned that this difference in the scope of claims made no difference given that "the newly asserted continuations are based on the same disclosure as the previously licensed patents, and . . . by definition, the continuations can claim no new invention not already supported in the earlier patents. Moreover, the same products accused in the earlier suit are accused here." 651 F.3d at 1361. Evertz points out that *General Protecht* focused on the patent-in-suit's disclosure, and like continuation patents, the disclosure presented in a divisional application can claim no new inventive subject matter. *See* MPEP § 201.06 ("[T]he disclosure presented in a divisional application must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application.").

As the Central District of California has explained, "*General Protecht's* focus on the patents' disclosure, rather than their claims, is somewhat anomalous given the law . . . that 'the grant of a patent does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude,' *TransCore*, 563 F.3d at 1275, coupled with the 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 34 F. Supp. 3d 1061, 1073-75 (C.D. Cal. 2014). Moreover, *Endo* construed *General Protecht* narrowly and found no implied license for a non-continuation patent despite the fact that, as emphasized by the dissent, the patents-in-suit and licensed patent all "claim[ed] priority to the

16

same provisional application and, thus, must cover the same inventive subject matter" in their "disclos[ure]." 746 F.3d at 1382 (Dyk., J., dissenting). In any event, key distinctions between this case and *General Protecht* remain: the plaintiff in *General Protecht* asserted a continuation patent covering the "same products" (651 F.3d at 1361), whereas this case addresses a divisional patent covering newly developed products.

To be sure, the Court is relying on Cascades's complaint allegations as to the timing of the IntelliTrak products' launch. Although Evertz does not dispute this timing in its response papers, perhaps discovery will reveal that IntelliTrak launched prior to the Cooper Agreement. And there may be room for the implied license doctrine to apply to a divisional patent, if by practicing the licensed patent Evertz would necessarily practice the patents-in-issue. Applying *General Protecht*, *TransCore*, and *Endo* to divisional patents, the District of Delaware found that "the relevant question is whether the inventive scope of the parent patent is such that in practicing that patent one would necessarily practice the [patent-in-issue]. For instance, if [defendant] were to make a product which practiced the claims of the parent patent, would such a product infringe the [patent-in-issue]?" *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, 2014 WL 3508201, at *4 (D. Del. July 15, 2014); *accord Universal Elecs.*, 34 F. Supp. 3d at 1075-76 (in applying *General Protecht* and *TransCore*, "[t]he question is whether Defendant remains free to practice the [licensed] Patent without infringing the [accused] Patent"). In *Comcast*, because it was "not clear whether the accused products incorporate technology

17

covered by a patent subject to the license agreement," the Court found the record insufficiently developed to grant summary judgment on the implied license doctrine. *Id.* at *5.

Cascades claims it is beyond dispute that the claims in the Cooper Patents can be practiced without infringing the claims of the patents-in-suit. R. 21 at 12-13. Evertz does not appear to dispute this conclusion; it avoids discussing claim scope. But it is possible that discovery will prove Cascades wrong. Claim construction has not yet taken place.

In any event, as in *Comcast*, the current record does not support a finding on the implied license issue as a matter of law. 2014 WL 3508201, at *4. Accordingly, the Court denies Evertz's motion to dismiss. Evertz may re-raise its implied license argument if discovery reveals a basis for it.

### III. Particularity of Pleading Infringement

Evertz also argues in an underdeveloped footnote that Cascades's complaint should be dismissed for failure to plead infringement with particularity. R. 20 at 7 n.10. The Court does not find this issue sufficiently developed for the Court to rule on it, and therefore agrees with Cascades that it is waived for purposes of this motion. *See, e.g.*, *Fuery v. City of Chicago*, 2016 WL 5719442, at *14 (N.D. Ill. Sept. 29, 2016) ("Arguments raised only in footnotes are waived"). Evertz should make this argument in a separate, developed motion if it believes it is appropriate to do so. Because Cascades suggests in response to this argument that it "would take" the

"opportunity to amend" (R. 21 at 15), Evertz should consult with Cascades before filing another motion to dismiss to first give Cascades an opportunity to amend.

## Conclusion

For the reasons explained above, Court denies Evertz's motion to dismiss [18].

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 20, 2018