**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CASCADES AV LLC, | |
| Plaintiff, | Case No.  17-cv-7881 |
| v. | Judge Thomas M. Durkin |
| EVERTZ MICROSYSTEMS, LTD, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
<u>DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## INTRODUCTION

Plaintiff Cascades AV LLC ("Cascades") has sued defendant Evertz Microsystems Ltd. ("Evertz") alleging infringement of three patents it says it acquired from "prolific" patentee J. Carl Cooper. Compl., ECF No. 1 ¶¶ 1-2, 7, 15; Aug. 20, 2018 Memorandum Opinion & Order, ECF No. 31, at 1. The Complaint, while if well-pleaded is taken as true for purposes of this motion, reveals a pattern by Cascades, like Mr. Cooper before it, of over-claiming its rights. Motions to dismiss for failure to state a claim are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014). With Cascades having declined the "opportunity to amend," that its counsel previously informed this Court it "would take," ECF No. 31 at 18-19, Evertz now respectfully moves to dismiss the most egregiously deficient aspects of Cascades' Complaint: its claims for direct infringement of U.S. Patent No. 8,810,659, and indirect infringement and willfulness for all three Asserted Patents, including Nos. 9,071,723 and 9,692,945.

## BACKGROUND

As the Complaint documents, Cooper and various non-practicing entities, including now Cascades, have long targeted Evertz with claims of patent infringement. In 2008, Evertz believed it had resolved these claims for good by entering "into three agreements with Cooper and two related licensing entities …" ECF No. 31 at 2. But the targeting of Evertz soon resumed—based on allegations about patents Evertz had already licensed. This lawsuit, predicated on misleading, conclusory, and inaccurate allegations, represents the latest effort to pressure Evertz into a costly settlement.

**A. The Actual History of Cascades' Pre-Suit Communications**

Cascades' incomplete and misleading description of its supposed pre-suit notice conveniently omits two critical facts: *first*, that Cascades and other Cooper entities repeatedly accused Evertz of infringing patents Evertz had previously licensed (including the '033, '281, and '295 Patents); and *second*, that Cascades did not even mention the asserted '723 or '945 Patents until the eve of litigation. The letters themselves, which this Court may consider,[1] refute Cascades' allegations regarding Evertz' supposed lack of good faith. *See, e.g.*, Compl. ¶¶ 53, 68 ("Evertz has refused to respond in good faith to Cascades' notices and attempts to discuss the Cooper patents…."). The letters also confirm that Evertz did not even have notice of the '723 or '945 Patents until barely two months before Cascades filed suit. *See* Exs. A-G.

Cascades' allegations begin with an October 15, 2013, letter from an entity called Watonga Technology, Inc. ("Watonga"). *See* Compl. ¶ 12; Ex. A (Oct. 15, 2013 Letter from D. Stevens to R. Magarelli). Watonga accused Evertz of infringing three Patents that Evertz had already licensed: the '033, '281, and '295 Patents, all of which issued well before 2008 and were thus covered by the earlier agreement.[2] Watonga also mentioned (and supposedly provided a claim chart for[3]) U.S. Publication No. 2012/0127365, which later issued as the '659 Patent. Compl. ¶ 13. In over four

---

[1] Because Cascades relies upon and cites these letters, which are central to its allegations of specific intent and willful infringement, the Court may treat them as incorporated into the Complaint. *See, e.g., Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Hepp v. Ultra Green Energy Servs.*, LLC, No. 13 C 4692, 2014 WL 7190860, at *3 (N.D. Ill. Dec. 17, 2014) (same); *see also* Order, ECF No. 31 at 4 n. 1 (considering licensing agreements referred to in the complaint).

[2] *See* ECF No. 31 at 12 ("there is no question that Cooper licensed," then-existing patents, including the '295 Patent). Similarly, the '281 Patent issued on February 26, 2002 and the '033 Patent issued on December 11, 2001. *See* Ex. H ('659 Patent) at 1:10-13 (noting issue dates).

[3] Evertz has no record of receiving the claims charts supposedly provided with the letter.

years of ensuing correspondence, neither Cooper nor any of his entities ever purported to provide another claim chart for *any* Asserted Patent. *Cf.* Compl. ¶¶ 15-33; Exs. A-G.

Cascades allegedly acquired the relevant patents in 2014. *See* Compl. ¶ 15. On July 2, 2014, Cascades again accused Evertz of infringing three patents Watonga had identified.[4] Cascades included claims charts for the already-licensed '033 and '281 Patents. When Evertz explained in response that Cascades could not sue on those patents because of the earlier agreement, Cascades argued that it could because the accused products did not exist until 2009. *See* Compl. ¶¶ 16-17; Ex. D (July 9, 2014 Letter from J. Orr to R. Greenspoon), Ex. E (July 17, 2014 Email from R. Greenspoon to J. Orr). This Court has rejected Cascade's argument. Order at 11 n.6 ("This reading is not supported by the plain language of the Agreement. Nor is it supported by the surrounding context.").

On September 5, 2014, Cascades sent another letter, adding an accusation that Evertz was infringing claim 33 of the '659 Patent. *See* Compl. ¶ 19, Ex. F (Sept. 5, 2014 Letter from R. Greenspoon to J. Orr.). Cascades did not provide a claim chart. *Cf. id*. Nor has it accused Evertz of infringing claim 33 in this case. Compl. ¶ 41 (identifying only exemplary claim 1).

Finally, two months before filing suit, Cascades first accused Evertz of infringing the '723 Patent and the '945 Patent. *See* Compl. ¶ 32, Ex. G (Aug. 30, 2017 Letter from R. Greenspoon to J. Orr). It listed three other patents too, which Cascades today does not assert. Ex. F at 1.The entire explanation for all five patents is: "[T]he following U.S. patents have issued and are applicable to various Evertz products: [patent numbers]." *Id.* at 1; see also *id.* at 2 (asserting "Evertz would require a license to [the '945 Patent] as well.").

---

[4] *See* Compl. ¶ 15; Ex. C (July 2, 2014 Letter from R. Greenspoon to R. Magarelli identifying the '033 Patent, the '281 Patent, and the '499 Patent).

### B.  Cascades' Deficient Direct Infringement Allegations

Cascades' sparse allegations provide almost no detail about the alleged infringement. Cascades describes the Asserted Patents as covering "improvements in ascertaining and correcting the processing delay of a signal that has become unsynchronized with other signals (such as when audio and video become unsynchronized), known generally as 'lip sync error.'" Compl. ¶ 1. The Complaint accuses a laundry list of fifty Accused Products of directly infringing exemplary Claim 1 of each Asserted Patent. *See* Compl. ¶¶ 36, 38, 41.

The Complaint takes pains to avoid the appearance that Cascades is accusing the same products Evertz previously licensed, accusing scores of products that Cascades asserts "Did Not Exist Before 2009." *See* Compl. ¶¶ 3, 10-11. Presumably Cascades predicates this conclusory (and incorrect[5]) statement on its contention that it accuses "IntelliTrak products and technology" first commercialized in February 2009. *Id.* ¶¶ 2, 6. But the Complaint never alleges whether (or how) Cascades believes each of the fifty Accused Products is sold or used with IntelliTrak. The closest Cascades comes is to suggest that it believes the Accused Products are "INTELLITRAK-equipped or optional." Compl. ¶¶ 38, 51, 66; *see also id.* ¶ 35 (alleging that Evertz sells unspecified "products to customers … including television networks, which use its INTELLITRAK technology").

As an initial matter, Cascades' Complaint does not reflect even the minimum degree of care required by Rule 11. Its list of fifty Accused Products, Compl. ¶ 36, includes not only those previously licensed, but also products that cannot be used with IntelliTrak and as to which there is no conceivable argument for infringement. An amended complaint should remove products (such

---

[5] Evertz can readily demonstrate that it sold many of the 50 listed Accused Products well before 2009; Cascades' conclusory allegation to the contrary is not well-pleaded, and should not be allowed to proceed.

as, for example, mechanical frames) for which an infringement allegation based on use with IntelliTrak is obviously untenable.

In addition, Cascades' infringement allegations concerning the now-expired '659 Patent are especially deficient. The '659 Patent is entitled "Delay and Lip Synch Tracker." Compl. ¶ 1; Ex. H ('659 Patent, cover page).[6] Its related application data claims that the '659 Patent is a division of various applications including one that issued as U.S. Patent No. 6,836,295, which itself is a continuation-in-part of an earlier application that issued as the already-licensed '281 Patent. *Id.*; *see also* ECF No. 31 at 2-3, 5, 12.

In many respects the '659 Patent bears close resemblance to the '281 Patent. Each Figure 1-5 is identical. *Compare* Ex. H, '659 Patent, *with* Ex. I, '281 Patent. Typographical errors aside, the substance of the specification describing the background and preferred embodiments of the invention is nearly identical except that the '659 Patent replaces the "tracker pulses" described in the '281 Patent with "trackers." *Compare, e.g.*, Ex. H at 3:20-22, 3:57-60 and 4:13-36, *with* Ex. I at 3:7-8, 3:46-50, and 4:3-27. Both patents contain claims directed to methods for tracking signals. *See, e.g.* Ex. H, '659 Patent, asserted claim 1; Ex. I, '281 Patent, claims 11-13. Claim 11 of the '281 Patent, for example, claims a "method for tracking a delay in a signal processing system," *id.* at claim 11, based upon "associating a tracker pulse with [a] signal," *id.*, and using it "to develop a determination of said delay in response to said tracker pulse," *id.*

To the extent Cascades would have this Court believe it is not attempting to "tak[e] back … that for which [it] has already received consideration," ECF No. 31 at 12 (citation omitted),

---

[6] The Court may take judicial notice of and consider relevant patents. Order, ECF No. 31, at 5 n.2 (noting that "'it is … well-established that a court may take judicial notice of patents or patent applications'" (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014)).

asserted claim 1 of the '659 Patent presumably must cover something different. That claim recites "a method of tracking an audio or video signal having an active portion" that is "passed through a first processing circuitry in a television system." Ex. H, '659 Patent, claim 1. Cascades asserts that the Accused Products have the required "active portion" because they "operate in the environment of television systems" and that the video image "is passed through processing circuitry in a television system." Compl. ¶ 42. The Complaint never specifies what or whose equipment constitutes the processing circuitry Cascades is accusing.

The method of asserted claim 1 of the '659 Patent also entails three steps, a, b, and c:

Step a: "[i]n response to artifacts already present in the active portion … associating a plurality of first input delay trackers with [a] first input signal." Ex. H, '659 Patent, claim 1. Each input delay tracker must correspond "to at least one said artifact." *Id.* Cascades says the Accused Products meet this limitation because they "contain circuitry that associates artifacts in a television signal (express characteristic components) with a first plurality of fingerprints ('first input delay trackers')." Compl. ¶ 44. Cascades never says what it means by "express characteristic components" or why they might plausibly constitute "artifacts" (they do not). And Cascades alleges nothing (by way of example or otherwise) to render plausible the assertion that the Accused Products associate "fingerprints" with any "express characteristic components."

Step b: "in response to artifacts in a first output signal from said first processing circuit, associating a plurality of first output delay trackers with said first output signal." Ex. H, '659 Patent, claim 1. As with the input delay trackers, each "output delay tracker" must correspond to at least one artifact." *Id.* Cascades again alleges that the Accused Products "associate fingerprints with the television signal at a destination point, derived from artifacts in the signal." Compl. ¶ 46.

Step c: "in response to [the plurality of input and output delay trackers], *determining if a version of said first input signal is being output from said first processing circuit as said first output signal*." Ex. H, '659 Patent, claim 1 (emphasis added). All hope of plausibility ends here. Cascades alleges only that the Accused Products analyze and compare origin and destination fingerprints "*for purposes that include lip sync error management*." Compl. ¶ 48. Nothing in the Complaint suggests or renders plausible that each of fifty Accused Products determines whether a signal being output is a version of an input signal.

### C.   Cascades' Conclusory Allegations of Indirect Infringement and Willfulness

Cascades' allegations of induced and contributory infringement are conclusory and substantially identical for each Asserted Patent:

> Evertz has also knowingly (since its issuance on [Date]) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the [Asserted Patent] (such as its customers in this judicial district and throughout the United States). Evertz continues to induce infringement of the [Asserted Patent]. Evertz has contributorily infringed and is a contributory infringer because, with knowledge of the [Asserted Patent] (since its issuance on [Date]), it supplies a material part of a claimed combination, where the material part is not a staple article of commerce, and is incapable of substantial noninfringing use. Evertz contributes to its customers' infringement because, with knowledge of the [Asserted Patent], it supplies the technology that allows its customers to infringe the patent.

Compl. ¶¶ 39 (as to the '659 Patent alleging "since its issuance on August 19, 2014, and at least since September 5, 2014"), 52 (as to the '723 Patent alleging "since its issuance on June 30, 2015"), 67 (as to the '945 Patent alleging "since its issuance on June 27, 2017, and at least since August 30, 2017"). Apart from the correspondence recounted above, the Complaint contains no other allegations relevant to Evertz' knowledge or intent.

Similarly, based on that substantively empty history, Cascades also now accuses Evertz of willful infringement, including of the two patents first mentioned on August 30, 2017. *See* Compl. ¶¶ 53, 68. Cascades' identical allegations of willfulness for each Asserted Patent read as follows:

Evertz's infringement of the [Patent-In-Suit] has been and continues to be willful and deliberate. Evertz has refused to respond in good faith to Cascades' notices and attempts to discuss the Cooper Patents or the possibility of licensing them. This failure to engage includes Evertz promising to send detail of its positions, but then failing to communicating [sic] again.

Compl. ¶¶ 40, 53, 68. The Complaint contains no other relevant allegations.

## LEGAL STANDARD

A complaint must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). Whether a defendant challenges sufficiency in a motion under Rule 12(b)(6) or Rule 12(c), the same basic requirements apply.[7] "*[D]etailed* factual allegations" are not required, *Twombly*, 550 U.S. at 555 (emphasis added), but *factual* allegations are. Accepting all well-pleaded facts as true and drawing inferences in the non-movant's favor, the court must conclude that a complaint contains enough "factual content" to support "the reasonable inference that the defendant is liable for the misconduct alleged." ECF No. 31 at 2 (quoting *Boucher v. Fin. Sys. Of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556, U.S. at 678) and citing *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018)).

*Iqbal* requires *substantive* plausibility. 556 U.S. at 678; *see also, e.g.*, *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Patent complaints must "contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015).[8]

---

[7] *Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 947 (N.D. Ill. 2015); *Rutledge v. City of Chicago*, No. 13 C 0870, 2013 WL 6645510, at *1 (N.D. Ill. Dec. 17, 2013) (noting that the same standards apply). Evertz brings this motion under Rule 12(b)(6) and in the alternative Rule 12(c).

[8] In *Addiction & Detoxification Inst.*, the Federal Circuit described the requirements of *Iqbal/Twombly* but applied a more lenient standard prior to the abrogation of Form 18.

**ARGUMENT**

**I.      Cascades Has Not Plausibly Alleged Direct Infringement Of The '659 Patent.**

Direct infringement requires that an accused product embody each limitation of a patent claim either literally or under the doctrine of equivalents. *See, e.g.*, *TIP Sys., LLC, v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1377-1379 (Fed. Cir. 2008) (citing, *inter alia*, *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). If any limitation is missing, there is no infringement as a matter of law. *See, e.g.*, *Warner-Jenkinson*, 520 U.S. at 29-30 (doctrine of equivalents cannot vitiate a claim limitation).

Cascades' sole attempt to state a plausible claim for direct infringement is for exemplary claim 1. This attempt fails, because the Complaint includes *no facts* from which this Court may plausibly conclude that Evertz (or anyone else) using the Accused Products practices one of the required claim limitations: step c of the claimed method.

Step c requires determining, in response to delay trackers, "if a version of [a] first input signal is being output from [a] first processing circuit as [a] first output signal." Ex. H, '659 Patent, claim 1. In supposed satisfaction of this limitation, Cascades alleges only that the Accused Products analyze and compare fingerprints "for purposes that include *lip sync error management*." Compl. ¶ 48 (emphasis added). But as the Complaint has it, "lip sync error" concerns processing delays in signals that have become unsynchronized where it is known that content is supposed to match, "such as when audio and video become unsynchronized." Compl. ¶ 1. There is nothing to suggest that "lip sync error management" entails any determination of whether a signal being output is a version of an input signal.

Step c shows that claim 1 covers a method where it is *unknown* whether the content being output is a version that is supposed to be synchronized with the input. The method determines

9

"whether" a version of a first input signal is being output as a first output signal. In contrast, the Accused Products allegedly perform lip sync error correction where it is known that signals are *supposed to sync*. Particularly if Cascades would have this Court believe it accuses something different than the delay calculation method of its '281 Patent, this point is important. Cascades has not alleged *any* facts to suggest that IntelliTrak makes version determinations (it doesn't).

The pleading requirements of *Iqbal* and *Twombly* apply with full force to allegations of patent infringement. Conclusory allegations are not enough; to survive dismissal, Cascades "must plead '*factual content* that allows the court to draw the reasonable inference that [Evertz] is liable.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018) (emphasis added) (quoting *Iqbal*, 556 U.S. at 678).[9] With respect to step c of asserted exemplary claim 1 of the '659 Patent, Cascades has not done so.

## II. Cascades Has Not Plausibly Alleged Claims for Indirect Infringement or Enhanced Damages Based on Willfulness.

For each Asserted Patent, Cascades asserts, in conclusory fashion, that Evertz is liable for induced and contributory infringement and alleges willful infringement as grounds for enhanced

---

[9] A complaint must "contain factual allegations that the accused product practices every element of at least one exemplary claim" *Software Research, Inc. v. Dynatrace LLC,* 316 F. Supp. 3d 1112, 1116 (N.D. Cal. 2018) (quotation omitted). Courts have repeatedly dismissed where a patentee failed to plead facts plausibly showing that an accused produced had each limitation of a claim. *See, e.g., Green Tea Ideas*, 2018 WL 1172998, at *2 (dismissing complaint where patentee failed to "specify which features of an accused product correspond to the limitations in the allegedly infringed patent"); *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017); *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 8:17CV478, 2018 WL 1400426, at *4 (D. Neb. Mar. 20, 2018); *Artrip v. Ball Corp.*, No. 1:14CV00014, 2017 WL 5037470, at *3 (W.D. Va. Nov. 3, 2017), *aff'd*, 735 F. App'x 708 (Fed. Cir. 2018). As Judge Shadur put it, a patentee must "allege facts about each element" because "the failure to practice even a single element is all that separates innovation from infringement." *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017).

damages under 35 U.S.C. § 284. Compl. ¶¶ 39-40, 52-53, 67-68. These claims fail as a matter of law in multiple respects.

### A. Cascades has not alleged knowledge of the '723 or '945 Patents.

For these two patents, Evertz' lack of knowledge before August 30, 2017 is fatal to Cascades' allegations of indirect infringement and willfulness. In contrast to direct infringement, where "knowledge or intent is irrelevant," *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 (2011), all three of these claims require, at a minimum, *knowledge* of the patent itself and of infringement. *See, e.g., Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *Velocity Patent LLC v. FCA US LLC*, 319 F. Supp. 3d 950, 971 (N.D. Ill. 2018) (willfulness turns on defendant's "knowledge ... of the patent and its infringement"), *reconsideration denied*, No. 13 C 8419, 2018 WL 4214161 (N.D. Ill. Sept. 4, 2018). Similarly, a claim for enhanced damages under § 284 requires a minimum threshold showing of willful infringement. As this Court explained in *Velocity*, willfulness turns on "knowledge ... of the patent and its infringement," as well as a defendant's "subjective intent in continuing to infringe." *Velocity*, 319 F. Supp. 3d at 971. "[N]o reasonable jury could find that [a defendant] willfully infringed the patent before it knew of its existence." *Id.* at 971 n.13.

Cascades' allegations here are insufficient as a matter of law to show that Evertz had knowledge of the '723 and '945 patents.[10] Although Cascades implies that Evertz disregarded

---

[10] As for the '659 patent, Cascades has at best alleged that Evertz had knowledge of the patent on September 5, 2014. Compl. 19, 39. The allegation of earlier notice about the patent application is immaterial. Pre-suit knowledge of a patent application is not sufficient to show knowledge of the asserted patent. *See, e.g., Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1117 (N.D. Cal. 2016) (dismissing willfulness claims where allegations of pre-suit knowledge rested upon notice of *application* for asserted patent and non-asserted patent). In

multiple inquiry letters, in fact *the only letter* that referenced the '723 and '945 patents was dated August 30, 2017—just two months before Cascades sued. That letter briefly asserts that these patents, and three others, "have issued and are applicable to various Evertz products." Compl. ¶ 32; Ex. G at 1. This marked the first mention of the '723 Patent and the '945 Patent in four years of correspondence. *See supra* at 2-3. Despite Cascades' careful crafting of the Complaint to imply that Evertz had prior knowledge, the bare-bones August 30, 2017 letter sent on the eve of litigation is the *only fact* alleged to show that Evertz had knowledge of these two patents. It fails.

Because Cascades has not alleged facts sufficient to show that Evertz had knowledge of the patents until the eve of filing suit, it has failed to state a plausible claim of inducement, contributory infringement, or willful infringement of the '723 and '945 patents. At the absolute minimum, Cascades cannot assert any of these claims prior to August 30, 2017.

**B. The Threadbare Indirect Infringement Claims Fail for Additional Reasons.**

Even if Cascades had adequately alleged pre-suit knowledge, its boilerplate allegations of induced and contributory infringement—identical recycled recitations word-for-word for each of the Asserted Patents—fail to state a plausible claim for relief. *See* Compl. ¶¶ 39, 52, 67. *Iqbal/Twombly* requires more than merely reciting the elements of a claim. *See, e.g., Superior Indus., LLC v. Thor Glob. Enterprises Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012) ("complaint falls far short of pleading facts necessary to state a plausible claim for either induced or contributory infringement"). Cascades' bare assertions of indirect infringement are textbook examples of inadequate pleading.

---

any event, because Cascades has not adequately alleged direct infringement of the '659 Patent, *see supra* 9-10, its claims for enhanced damages and indirect infringement necessarily fail as well.

***Induced infringement.*** To state a claim for induced infringement, Cascades must "plausibly show[] that [Evertz] specifically intended [its] customers to infringe … and knew that the customer's acts constituted infringement." *Bill of Lading*, 681 F.3d at 1339. Instead, Cascades simply asserts that Evertz has knowingly and intentionally "actively aided, abetted, and induced others to directly infringe." Compl. ¶¶ 39, 52, 67. This bare legal conclusion, devoid of facts, is not enough. *See, e.g., Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.,* No. C 11-04049 JW, 2012 WL 2343163, at *3–4 (N.D. Cal. June 5, 2012) ("mere conclusions" insufficient). If the pleading requirements have any meaning, Cascades must allege at least some facts making it plausible to conclude that Evertz intended its customers to infringe. But the Complaint is utterly devoid of allegations regarding advertising, instructional manuals, customer support or any other materials that could possibly show that Evertz actively encouraged infringement.

***Contributory infringement.*** Contributory infringement requires "a material or apparatus for use in practicing a patented process" that "is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Bill of Lading,* 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)). Again, the Complaint merely recites the legal standard, without more. *See* Compl. ¶¶ 39, 52, 67. At a minimum Cascades must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *EZ STAK, LLC v. Dejana Truck & Util. Equip. Co., LLC,* No. 17 C 8742, 2018 WL 2933603, at *4 (N.D. Ill. June 12, 2018) (quoting *Bill of Lading,* 681 F.3d at 1337). Cascades alleges no facts at all. There is no plausible basis to infer the absence of substantial nonconforming uses. *See, e.g., Intellectual Ventures I LLC v. Bank of Am., Corp.,* No. 3:13-CV-358-RJC-DSC, 2014 WL 868713, at *2–3 (W.D.N.C. Mar. 5, 2014) (conclusory allegations regarding nonconforming uses insufficient);

*Hitachi Kokusai Elec. Inc. v. ASM Int'l*, N.V, No. 17-CV-06880-BLF, 2018 WL 3537166, at *5 (N.D. Cal. July 23, 2018) (same).

### C. Cascades has not plausibly alleged egregious conduct.

Cascades' claims for enhanced damages based on willfulness likewise fail for an additional reason: the complaint does not allege facts that plausibly constitute egregious conduct. An award of enhanced damages under § 284 is "generally reserved for egregious cases of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). The Supreme Court has described that level of egregious conduct "as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. No alleged conduct even approaches this.

Although the *Halo* standard is "highly fact-based," *Velocity*, 319 F. Supp. 3d at 971, a plaintiff must allege sufficient facts that, taken as true, plausibly satisfy at least the minimum threshold of culpability. That is, Cascades must plausibly allege that Evertz engaged in egregious misconduct "beyond typical infringement." *Halo*, 136 S. Ct. at 1935. Numerous courts have dismissed claims for enhanced damages where the allegations fell short of this demanding standard. *See, e.g., Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) (dismissing willfulness claim where plaintiff "alleged sufficient facts to show knowledge, but not to show the additional element of egregiousness"); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 216CV00857RCJVCF, 2016 WL 4521682, at *14 (D. Nev. Aug. 29, 2016) (conclusory allegations that defendant was aware of patents and continued infringing conduct insufficient to state claim for willfulness). This Court should do the same.

The closest Cascades has come is to allege that Evertz ignored pre-suit notice. But mere knowledge of a patent is insufficient for enhanced damages. *See Halo*, 136 S. Ct. at 1936 (Breyer,

14

J., concurring); *Velocity,* 319 F. Supp. 3d at 971 (acknowledging that "[k]nowledge … is not sufficient on its own.").[11] The September 5, 2014 and August 30, 2017 letters provided no substance whatsoever—no analysis of the patents, no claim charts—to support Cascade's bare assertions of infringement. At a minimum, Cascades cannot plausibly allege a claim for enhanced damages for the vanishingly short period where Evertz allegedly had pre-suit knowledge of the '723 and '945 Patents. *See, e.g., Wisconsin Alumni Research Found. v. Apple, Inc.,* 261 F. Supp. 3d 900, 918 (W.D. Wis. 2017) (rejecting willful infringement claim based on two-month period before filing suit), *appeal dismissed*, No. 17-2265, 2018 WL 507322 (Fed. Cir. Jan. 3, 2018).[12] Moreover, for years Cascades accused Evertz of infringing patents to which it was licensed. *See supra* at 5-8. This negates any inference of egregious conduct by Evertz.

This motion is not academic. If Cascades believes it can rectify these deficiencies (Evertz believes it cannot), Cascades should amend (as it previously said it would). The alternative is to subject Evertz to unfairly broad discovery, exposure, and expense. *See, e.g. In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010) (*Iqbal/Twombly* "is designed to spare defendants the expense of responding to bulky, burdensome discovery" unless plaintiffs allege enough facts "to enable an inference that the suit has sufficient merit").

---

[11] *See also Intellectual Ventures I LLC v. Symantec Corp*., 234 F. Supp. 3d 601, 611–12 (D. Del. 2017) ("pre-suit knowledge alone is not sufficient to support a finding of willful infringement"), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018).

[12] Post-suit conduct is irrelevant to the sufficiency of Cascades' Complaint. "A patentee … must have a good faith basis for alleging willful infringement at the time when the complaint is filed." *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-CV-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017). The only question presently before the Court is whether *this* Complaint adequately alleges willful infringement. As a matter of law, a party's original complaint cannot make any allegations regarding post-suit conduct. *See id.; Cooper Lighting, LLC v. Cordelia Lighting, Inc.,* No. 1:16-CV-2669-MHC, 2017 WL 3469535, at *2 (N.D. Ga. Apr. 6, 2017) (allegations of willful infringement must be based on pre-suit conduct).

Respectfully submitted,

Dated:   October 8, 2018            By:   Elizabeth R. Brannen

Andrew D. Campbell
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
acampbell@novackmacey.com
rparker@novackmacey.com
*Local Counsel for Defendant*

Thad A. Davis (*admitted pro hac vice*)
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8300
tdavis@gibsondunn.com

Elizabeth R. Brannen (admitted *pro hac vice*)
STRIS & MAHER LLP
725 S Figueroa St., St 1830
Los Angeles, CA 90017
Telephone: (213) 995-6809
Facsimile: (213) 995-2708
elizabeth.brannen@strismaher.com

*ATTORNEYS FOR DEFENDANT*
*EVERTZ MICROSYSTEMS, LTD*

## <u>CERTIFICATE OF SERVICE</u>

Rebekah H. Parker, an attorney, hereby certifies that, on October 8, 2018, she caused a true and correct copy of the foregoing ***Defendant's Memorandum of Law in Support of Its Motion to Dismiss for Failure to State A Claim***, to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/* Rebekah H. Parker