**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CASCADES AV LLC<br><br>Plaintiff,<br><br>vs.<br><br>EVERTZ MICROSYSTEMS, LTD.<br><br>Defendant. | Civil Action No. 1:17−cv−07881<br><br>Honorable Thomas M. Durkin |

**CASCADES AV'S OPPOSITION TO EVERTZ'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (ECF#38)**

**I.   INTRODUCTION**

Evertz Microsystems, Ltd. ("Evertz") has moved again to dismiss for failure to state a claim. (ECF#38). But its latest motion to dismiss is no more meritorious than the first. Cascades AV ("Cascades") respectfully requests that the Court deny the motion.

Evertz brings only a ***partial*** motion to dismiss. On its own terms, the new motion does not challenge Cascades' pleading of direct infringement of two of the patents-in-suit: U.S. Patent Nos. 9,071,723 and 9,692,945. At a minimum, this leaves the direct infringement allegations of Counts II and III intact, such that the case goes forward regardless of Evertz's current arguments.

Though it leaves untouched the direct infringement allegations of Counts II and III, Evertz does try to attack allegations of indirect infringement, willfulness, and direct infringement of a third patent-in-suit—U.S. Patent No. 8,810,659 (Count I). Yet other than make factual representations to contradict the Complaint (a fruitless exercise where the law requires the Court to take the Complaint's factual allegations as true), Evertz overstates what the law requires of a patent infringement plaintiff. Fortunately, a rich body of case law refutes Evertz's misimpressions about the level of pleading specificity required in a patent case.

For example, Evertz contends that the Complaint fails to plead minimum facts supporting the scienter requirement for a claim of inducement to infringe the '723 and '945 patents under 35 U.S.C. § 271(b). But Evertz admits that Cascades has adequately pleaded direct infringement of both of those patents, and admits that Cascades notified Evertz of its infringement of those patents months before commencing this litigation. (ECF#40, at 3, 11). That is more than enough. As explained in detail below, those two facts are assumed to be true at the pleading stage—(1) the fact of infringement, and (2) notice from the plaintiff of such infringement. And those two facts alone permit a plausible inference that Evertz carried out its activities to encourage third party infringement (*i.e.*, by its customers) with the required intent. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) ("In [*Bill of Lading*] it was unclear whether the claimed method had been performed at all, but we determined that the patent owner had adequately pleaded intent [for an inducement claim] where it alleged knowledge of the patent and had plausibly pleaded that the defendants' customers performed the claimed method.").

A similar analysis also leads inexorably to the conclusion that the Complaint adequately pleads willfulness. Numerous courts (including this one) actually hold that neither inducement nor willfulness even requires pre-suit notice of the patents. *Finjan, Inc. v. ESET, LLC*, 3:17-cv-0183-CAV-(BGS), 2017 U.S. Dist. LEXIS 40784, at *9-10 (S.D. Cal. Mar. 21 2017) (inducement and willfulness); *Raytheon Co. v. Cray, Inc.*, 2:16-CV-00423-JRGRSP, 2017 U.S. Dist. LEXIS 56729, at *11-13 (E.D. Tex. Mar. 12, 2017) (inducement and willfulness); *Huawei Techs. Vo. Ltd. v. T-Mobile U.S., Inc.*, 2:16-CV-00052-JRG-RSP, 2017 U.S. Dist. LEXIS 43240, at *21-25 (E.D. Tex. Feb. 20, 2017) (inducement and willfulness); *DermaFocus LLC v. Ultera, Inc.* 201 F.Supp.3d 465, 472-73 (D. Del. 2016) (willfulness); *Simplivity Corp. v. Springpath, Inc.*, 4:15-13345-TSH, 2016 U.S. Dist. LEXIS 155017, at *22, *57-62 (D. Mass. July 15, 2016) (inducement and willfulness); *Trading Techs. Intern., Inc. v. BCG Partners, Inc.*, 10 C 715, 2011 U.S. Dist. LEXIS 99415, at *14-16 (N.D. Ill. Sept. 2, 2011)

2

(inducement); *see also Intellect Wireless Inc. v. Sharp Corp.,* 10 C 6763, 2012 U.S. Dist. LEXIS 31669, at *35 (N.D. Ill. March 9, 2012) ("Defendants' knowledge of the patent as of the time of the suit's commencement can satisfy the knowledge requirement for conduct that post-dates the date of the complaint.") (All unpublished LEXIS citations are collected within Exhibit A.)

The extra fact that pre-suit notice of infringement occurred here, and the fact that infringement exists, only deepens the plausibility of Cascades' pleading that Evertz intended to infringe, and was willful while doing so. *See Bio-Rad Labs. Inc. v. ThermoFisher Scientific Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017); *Raytheon Co. v. Cray, Inc.*, 2017 U.S. Dist. LEXIS 56729, at *11-13 (holding that pleading acts of infringement with knowledge of the patents was sufficient for alleging willfulness); *Crypto Research, LLC v. Assay Abloy, Inc.*, 236 F. Supp. 3d 671, 688 (E.D.N.Y. 2017) ("The complaint adequately alleges that the defendants committed acts of infringement with full knowledge of the plaintiff's rights in its patents. That is sufficient."); *Panoptis Patent Mgmt., LLC v. Blackberry Corp.*, 2:16-CV-00059-JRG-RSP, 2017 U.S. Dist. LEXIS 27756, at *17-18 (E.D. Tex. Feb. 10, 2017) (same); *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 265 (D. Mass. Nov. 23, 2016) (same).

Finally, Evertz presents an especially weak challenge to the pleading of direct infringement of the '659 patent. Here, Evertz singles out the application of one claim limitation (the "determining" step), attempting to quibble with the pleaded fact that this step occurs when a particular comparison of two pieces of information occurs in its IntelliTrak-equipped products. Yet this fact, when taken as true, renders plausible that Evertz's equipment practices the named claim limitation. *See Disc Disease Sol'ns Inc. v. VGH Sol'ns, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (specifically identifying accused products and alleging they meet "each and every element of at least one claim" is "enough to provide . . . fair notice of infringement of the asserted patents"); *EZ STAK, LLC v. Dejana Truck & Util. Equip. Co., LLC*, 17 C 8742, 2018 U.S. Dist. LEXIS 98537, at

3

*5-8 (N.D. Ill. June 12, 2018) (Durkin, J.) (applying *Disc Disease* to deny patent case motion to dismiss). When Evertz equipment performs a comparison between two pieces of information, this plausibly supports that it "determines" whether the signal used to provide the second piece of information is a version of the signal used to provide the first piece of information. For Evertz to contend otherwise makes no sense. Cascades' allegation also far exceeds the minimum legal requirements.

For the reasons just mentioned, explained in greater detail below, the Court should deny Evertz's motion to dismiss (ECF#38) in its entirety.

## II.     LEGAL STANDARD

Rule 8(a) requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need detailed factual allegations to survive a dismissal motion, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a plaintiff need not prove all elements of its case at the pleading stage. *Id.* at 564 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). A complaint need not even correctly identify the cause of action as long as the allegations are sufficient to put the defendant on notice of the allegedly unlawful conduct. *Snap-On Inc. v. Robert Bosch, LLC*, 2012 U.S. Dist. LEXIS 95772, at *17 (N.D. Ill. July 11, 2012). Instead, the complaint need only allege enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). In other words, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (citation omitted).

Other than bare legal conclusions, a court must accept as true all of the allegations contained in a complaint when reviewing a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ruling on such a motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the assumed-true facts state a plausible claim for relief, the complaint will survive a motion to dismiss. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

### III. ARGUMENT

Claims for indirect infringement and willfulness are measured by the pleading standards of *Twombly* and *Iqbal*. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). *Twombly* did not change the pleading requirements under Fed. R. Civ. P. 8(a) in a patent infringement case. *McZeal*, 501 F.3d at 1357 n.4.

For pleading indirect infringement of the '723 and '945 patents and willfulness, Evertz argues that Cascades needed to plead something more than its knowledge of those patents from Cascades' letter dated August 30, 2017, which also notified Evertz that it was infringing. (ECF#40, at 3, 11). This court has already rejected these arguments. *See* authorities cited on pages 2-3 above; *see also Cascades Branding Innovation v. Walgreen Co.*, Case No. 11-C-2519, 2012 U.S. Dist. LEXIS 61750 (N.D. Ill. May 3, 2012) [hereinafter *Walgreen*].

For pleading direct infringement of the '659 patent, Evertz argues that Cascades needed to plead "*any* facts to suggest that IntelliTrak makes version determinations (it doesn't)," and argues that the pleaded fact that IntelliTrak compares input and output fingerprints to make such determinations does not suffice. (ECF#40, at 9-10). This Court and the Federal Circuit have already rejected attacks such as these. *See Disc Disease*, 888 F.3d at 1260; *EZ STAK*, 2018 U.S. Dist. LEXIS 98537, at *5-8.

5

### A. Cascades Has Pleaded Sufficient Facts to State a Claim for Active Inducement under 35 U.S.C. § 271(b)

In its motion, Evertz primarily argues that the Complaint is lacking with regard to (1) Evertz's intent for its customers to infringe with regard to the '723 and '945 patents, and (2) that its customers' acts constitute infringement. (ECF#40, at 12-13).

#### 1. Scienter

Evertz is not correct that the Complaint fails to allege adequate inducement scienter. First, Evertz overlooks the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . . . *[I]ntent, knowledge*, and other conditions of a person's mind *may be alleged generally*.") (emphasis added). Second, the Supreme Court has held that it is enough to prove that a defendant knows of the patent, and knows of the downstream infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011).

Consequently, pleading indirect infringement requires only "that the party inducing or contributing to infringement know of the patent (or be willfully blind to the existence of such a patent) and that the product or activity at issue infringes." *Walgreen*, 2012 U.S. Dist. LEXIS 61750, at *7 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009)). In *Walgreen* this Court held that "[i]t is arguably sufficient to merely note that a notice of infringement was sent to a defendant, because implicit in this is the inference that such notice (1) notified a defendant of the existence of the patent in suit and (2) informed them of the infringement." *Id.* at *7-8. An allegation that the defendant was sent both an infringement notice and a license offer to abate its infringement makes those inferences explicit, and therefore satisfies Rule 8. *Id.* at *8. The Federal Circuit has since expressly endorsed this Court's statement of inducement pleading standards. *Lifetime Indus.*, 869 F.3d at 1380 (defendant knowledge of the patent and the fact of customer

6

infringement sufficient allegations to support inducement claim); *see also Kyowa Hakka Bio, Co. Ltd. v. Ajinomoto Co.*, 17-313, 2018 U.S. Dist. LEXIS 22392, at *27 (D. Del. Feb. 12, 2018) ("Courts have repeatedly found that pleading the existence of a direct infringer, the defendant's knowledge of the patent, and the defendant's specific intent to induce infringement is sufficient to sustain a § 271(b) claim under the *Twombly/Iqbal* standards.").

Cascades expressly alleged the fact of Evertz's knowledge of the '723 and '945 patents in August 2017, well before suit. (ECF#40, at 3, citing Exhibit G and Compl. at ¶¶ 32). This was mere weeks after the issuance of the '945 patent, such that Evertz has known about the '945 patent in particular for nearly the entire time it has been in force. Further, Cascades sent notice of infringement and an offer to discuss a license for these patents with that communication. *Id.* Under the wealth of case law cited on pages 2-3 above, this satisfies the minimum scienter pleading requirements for a claim of inducement of infringement. As eloquently put in yet another decision from this Court:

> While RSS's allegations are not detailed, they are enough to survive dismissal. RSS alleges on "information and belief" that Accuray and CTCA are "at least as of the date of the filing of this complaint" inducing infringement of the '848 patent. RSS further states that the Tomo machine infringes the '848 patent. From these few facts alone, it is reasonable to infer that the Tomo machine incorporates a system that infringes the '848 patent, and that defendants intend to induce the infringement because they, at the least, now know of the infringing nature of the machine and continue to sell, use, or encourage others to use the machine. Though some facts are required even when alleging knowledge and intent generally, RSS appears to have provided at least the minimum amount of facts.

*Radiation Stabilization Solutions LLC v. Accuray Inc.*, Case No. 11-CV-07700, 2012 U.S. Dist. LEXIS 117978, at *11-12 (N.D. Ill. Aug. 21, 2012). Cascades' complaint goes even further by alleging pre-suit notice of infringement, and therefore alleges even more facts supporting a plausible inference as to Evertz's knowledge of the ongoing infringement and continued provision of the infringing product. Evertz's motion is devoid of merit on this point.

7

### 2. Active Inducement

Cascades' complaint also plausibly alleges that Evertz knowingly and intentionally actively aided, abetted and induced others to directly infringe, such as its customers. *See* Compl. at ¶¶ 39, 52, 67. Evertz argues (without citing any supporting case law) that Cascades was required to specify by name exactly what type of activity Evertz performs to encourage third party infringement, as part of its inducement pleading.[1] *See* (ECF#40, at 13, citing examples of "advertising, instructional manuals, customer support or any other materials."). That is not correct.

First, Evertz overlooks allegations in the Complaint that in context supply reasonable inferences that these activities occur. The Complaint identifies Evertz's IntelliTrak feature (which is installed onto numerous specific Evertz products) as the feature that causes Evertz and its customers to infringe. *See* Compl. at ¶¶ 38, 51, 66. Evertz sought and received trademark protection for this brand name. *See* Compl. ¶¶ 5-6. Evertz sells its IntelliTrak-equipped products to customers including television networks, which use the IntelliTrak technology. *See* Compl. ¶ 35. Evertz "uses" IntelliTrak at trade shows. *See* Compl. at ¶¶ 38, 51, 66. It would, in fact, be *implausible* that, having acquired a distinctive brand identity for the infringing feature set, and having shown customers how to use it at trade shows, Evertz does *not* provide customers with, in Evertz's words, "advertising, instructional manuals, customer support or any other materials." It is absurd to believe that Evertz would build a product that helps television networks manage lip sync error, and not market or provide support for the feature.[2]

---

[1] Evertz's citation of *Avocet Sports Tech. Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 U.S. Dist. LEXIS 87747 (June 5, 2012) (N.D. Cal. June 5, 2012) does not support the existence of this supposed pleading requirement. There, the court dismissed without prejudice because of a failure to plead knowledge of the patent, not because of a failure to enumerate inducing activities.
[2] This Court may take judicial notice that Evertz has a website devoted to IntelliTrak: https://evertz.com/products/IntelliTrak.

8

Second, the law does not even require Cascades to plead the activities Evertz claims to be missing from the factual allegations, or facts that lead one reasonably to infer their existence. *See Conair Corp. v. Jarden Corp.*, 13-cv-6702 (AJN), 2014 U.S. Dist. LEXIS 112252 (S.D.N.Y. Aug. 12, 2014). In *Conair*, for example, the court held that, in the context of the complaint, the "mere sale" of an infringing device can "be considered an act that would induce infringement." *Id.* at *6 (internal quotation omitted). The *Conair* court noted that, as here, "the product itself is (allegedly) infringing." *Id.* at *8. In that context, it was reasonable to infer that the defendant "intended and expected its customers to use" the feature that caused the product as a whole to infringe, so that "the mere sale of the allegedly infringing coffee machines in this case is sufficient circumstantial evidence of Jarden's intent to induce its customers' infringement." *Id.* at *8-9. The *Conair* court cited prior holdings that also supported that the mere sale of an infringing unit qualifies as active inducement. *Id.* at *9 (citing *Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008) and *Wing Shing Prods. (BVI) v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 411 (S.D.N.Y. 2007)). The same is true here. The Complaint alleges the sale of devices with the infringing features. *See* Compl. ¶¶ 2, 4, 35, 38, 51, 66. That is all that was required.

### B. Cascades Has Pleaded Sufficient Facts to State a Claim for Willful Infringement

Evertz also wrongly asserts that Cascades' Complaint falls short of Rule 8 in its claim for willful infringement. Contrary to Evertz's arguments, "the bar for pleading willful infringement is not high." *MobileMedia Ideas LLC v. HTC Corp.*, Case No. 2:10-cv-112, 2011 U.S. Dist. LEXIS 104892, at *5 (E.D. Tex. Sept. 15, 2011) (citation omitted). Even if the Court chose not to follow the authorities cited on pages 2-3 showing that pleading willfulness does not require pleading pre-suit knowledge, a plaintiff certainly pleads willful infringement when it alleges (1) infringement, and (2) pre-suit "knowledge" of the patent. *See, e.g., Mitutoyo Corp. v. Cent. Purchasing, LLC,* 499 F.3d

9

1284, 1290 (Fed. Cir. 2007). Here, Cascades alleges both. The complaint alleges that Evertz's infringement has been willful because Evertz has been aware of the patents-in-suit since receiving variously dated notices of infringement. *See* Compl. at ¶ 12, 13, 19, 32, 38, 39, 51, 52, 67, 68. This alleges pre-suit knowledge.

Contrary to Evertz's assertion (ECF#40, at 14), it is not necessary to **plead** egregious conduct under the standard announced in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "At the pleading stage, it is not necessary to show that the case is egregious." *Raytheon*, 2017 U.S. Dist. LEXIS 56729, at *11-13; *see also Kyowa Hakka Bio*, 2018 U.S. Dist. LEXIS 22392, at *36 ("[Even after *Halo*], where a complaint permits an inference that the defendant was on notice of the potential infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful infringement."); *Crypto Research*, 236 F. Supp. 3d at 688 ("The complaint adequately alleges that the defendants committed acts of infringement with full knowledge of the plaintiff's rights in its patents. That is sufficient."); *Panoptis Patent Mgmt*, 2017 U.S. Dist. LEXIS 27756, at *17-18 (same); *Sunrise Techs.*, 219 F. Supp. 3d at 265 (same). The two decisions Evertz cites to the contrary are nonpersuasive in view of decisions of this Court holding directly contrary. *E.g.*, *Intellect Wireless*, 2012 U.S. Dist. LEXIS 31669, at *35. And they are distinguishable as well, since they do not include allegations of pre-suit notice (such as exists here). *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 311 F. Supp. 3d 1078, 1084 (D. Minn. 2018) (distinguishing at least one of Evertz's cases on this ground).

In any event, the alleged facts do amount to egregious conduct. For example, Cascades pleaded facts showing that Evertz stonewalled pre-suit licensing discussions. *See* Compl. ¶¶ 12-34.[3]

---

[3] Evertz raises a jury argument that its stonewalling was appropriate (not egregious) because this Court supposedly held that some of the earlier-asserted patents were already licensed. (ECF#40, at 5-8, 15). This is a red herring. From the earliest October 15, 2013 communication, the asserted rights included non-licensed intellectual property. This Court held the patents-in-suit are **not**

10

Evertz, in effect, threw Cascades' notices and overtures in the proverbial garbage and refused to engage, while knowing of its infringement. Such activity constitutes egregious conduct. *Finjan, Inc. v. SonicWall, Inc.*, 2018 U.S. Dist. LEXIS 177061, at *3 (N.D. Cal. Oct. 15, 2018) (noting that "facts from which it could be inferred that [defendant] had engaged in disingenuous licensing negotiations, including alleging that '[a]t no time did [defendant] provide any explanation as to how any of the Accused Products do not infringe any of the Asserted Patents.'"); *compare* Compl. ¶ 34 (noting Evertz never denied that the patent claims covered its products in pre-suit communications).

### C. Cascades Has Pleaded Sufficient Facts to State a Claim for Contributory Infringement under 35 U.S.C. § 271(c)

Evertz also asserts fatally flawed arguments in seeking to dismiss Cascades' contributory infringement allegations. It argues that the Complaint merely recites a legal standard, and does not plead facts allowing an inference that the components sold or offered for sale have no substantial non-infringing uses. (ECF#40, at 13-14). However, the Complaint alleges that the IntelliTrak feature installed into Evertz products causes such products to infringe. *See* Compl. ¶¶ 2, 12, 35, 38, 51, 66. That is a pleaded fact. This gives sufficient context to the additional factual allegation that such products have no substantial noninfringing uses. *See* Compl. ¶¶ 39, 52, 67.

The fact that IntelliTrak is embedded in a larger product does not refute contributory infringement. As the Federal Circuit has recognized, if that were the standard, "evasion of the protection intended by Congress in enacting § 271(c) would become rather easy." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008), *cert. denied*, 557 U.S. 936 (2009). The *Ricoh* court reasoned:

---

licensed. (ECF#31). Yet Evertz at one point falsely (and egregiously) asserted that they are. *See* Compl. ¶ 30. The jury will decide willfulness of Evertz's infringement of the unlicensed patents-in-suit, not of allegedly licensed patents omitted from suit.

11

> Quanta should not be permitted to escape liability as a contributory infringer merely by embedding that microcontroller in a larger product with some additional, separable feature before importing and selling it. If we were to hold otherwise, then so long as the resulting product, as a whole, has a substantial non-infringing use based solely on the additional feature, no contributory liability would exist despite the presence of a component that, if sold alone, plainly would incur liability.

*Id.* The court noted that such a result would be arbitrary, and made its point with a hypothetical patented method of using an answering machine to take messages. *Id.* at 1337 n.7 ("If a manufacturer of an infringing answering machine sells two versions of the device, a stand-alone version and a version with a built-in telephone, consumers directly infringe when they use either to carry out the patented message-taking method. Under the dissent's logic, however, the manufacturer would only incur contributory liability for the stand-alone answering machine, and not for the version that is identical but for the addition of a telephone."). The Federal Circuit reaffirmed this principle in 2009 in *Lucent Techs. See* 580 F.3d at 1321 ("Here, the infringing feature for completing the forms, *i.e.*, the date-picker tool, is suitable only for an infringing use. Inclusion of the date-picker feature within a larger program does not change the date-picker's ability to infringe.").

The same is true here. Evertz cannot escape contributory liability merely because it incorporated the infringing instrumentality into a larger application. The Court should deny the motion to dismiss on this ground.

### D. Cascades Adequately Pleaded Direct Infringement of the '659 Patent

Finally, when making its sole attack on Cascades' pleading of direct infringement—isolating for scrutiny only claim limitation 1(c), and only of the '659 patent—Evertz surprisingly omits citing the Federal Circuit's most recent controlling authority on point: *Disc Disease*. This omission is particularly perplexing, since in pre-motion discussions, Cascades brought to Evertz counsel's

12

attention the *Disc Disease* decision, plus this Court's later-issued *EZ STAK* holding that relies on *Disc Disease* to deny a motion to dismiss a direct infringement claim.

Again, Evertz singles out the application of one claim limitation (the "determining" step), attempting to quibble with the pleaded fact that this step occurs when a particular comparison of two pieces of information occurs in its IntelliTrak-equipped products.[4] (ECF#40, at 9-10). Yet this fact, when taken as true, renders plausible that Evertz's equipment practices the named claim limitation. *See Disc Disease*, 888 F.3d at 1260 (specifically identifying accused products and alleging they meet "each and every element of at least one claim" is "enough to provide . . . fair notice of infringement of the asserted patents"); *EZ STAK*, 2018 U.S. Dist. LEXIS 98537, at *5-8 (applying *Disc Disease* to deny patent case motion to dismiss).

When Evertz equipment performs a comparison between an input fingerprint and an output fingerprint—a factual allegation that does not merely parrot the claim language—this plausibly supports that it "determines" whether the output signal used for generating that fingerprint is a version of the input signal used for generating the other fingerprint. *See* Compl. ¶¶ 47-48.[5] Cascades even went above and beyond the minimum requirements by including limitation-by-limitation factual allegations and applying them to named Evertz products that contain IntelliTrak. *See LoganTree LP v. Garmin Int'l, Inc.*, 17-1217 EFM KGS, 2018 U.S. Dist. LEXIS

---

[4] Before reaching the argument section that cabins its attack to claim limitation 1(c) alone, Evertz's brief tries to attack the credibility of Cascades' allegations about other claim limitation assertions. (ECF#40, at 4-6). The Court should ignore such irrelevant attacks. Evertz does not rest any argument for dismissal on them. In one particular case, Evertz ironically attacks the Complaint's use of the term "express characteristic components" (ECF#40, at 6), but this phrase originates **with Evertz itself**.

[5] In LPR 2.2 infringement contentions being served today, Cascades identifies the type of comparison as a "cross correlation" or a "sliding technique" between two series of fingerprint values, along with provision of a "match confidence" between two candidate A/V signals. Cascades' source for this information (in part) is Evertz's own patent describing IntelliTrak. Cascades first obtained Evertz's acknowledgment that it is reasonable to rely on this patent for such LPR 2.2 disclosures, to understand how IntelliTrak works.

13

119728, at *9-10 (D. Kan. July 18, 2018) (applying *Disc Disease* while holding that "a plausible claim for direct infringement need not show how the accused product infringes each limitation of one claim of the patent at issue"); *EZ STAK*, 2018 U.S. Dist. LEXIS 98537, at *6-*7 (observing that it "goes well beyond the allegations found satisfactory in *Disc Disease* [to] compar[e] the limitations in the asserted patents to the allegedly infringing products."); *cf. Artip v. Ball Corp.*, 2018-1277, 2018 U.S. App. LEXIS 13915, at *12-15 (Fed. Cir. May 23, 2018) (nonprecedential) (distinguishing *Disc Disease* while affirming dismissal because the plaintiff had toured and photographed defendant's factory, but still omitted any identification of which specific machine infringed).

For Evertz to contend otherwise makes no sense. The most natural way for a "determination" to be made whether one thing is a version of another is to "compare" something about them (with the details of how the comparing gets done left to the imagination of the technician). At best, Evertz's argument seems to rely on some sort of undeveloped non-infringement claim construction. But the Court does not take up claim construction (especially unexplained claim construction) at the pleading stage. *See Pressure Specialist, Inc. v. Next Gen Mfg.*, No. 17-CV-6582, 2018 U.S. Dist. LEXIS 10987, at *9 (N.D. Ill. Jan. 24, 2018) (denying motion to dismiss patent infringement complaint filed under *Twombly*, in part because "the Federal Circuit has cautioned against construing claim language to resolve, at the pleading stage, what are effectively non-infringement arguments.") (citing *Bill of Lading*, 681 F.3d at 1343 n.13).

Evertz also sows confusion over pleading requirements by seeming to rely on a different Cascades patent (not the '659 patent), to argue that Cascades must shoulder a separate and additional burden to show that "it accuses something different than the delay calculation method of its '281 Patent." (ECF#40, at 10). Evertz does not explain why it believes the law imposes a different infringement burden on Cascades than it imposes on every other patentee. A patentee's burden is to show that an accused system or method involves practice of each and every limitation

14

of an asserted claim. There is no extra burden of showing that an infringement accusation is not simultaneously an accusation against another commonly-owned patent claim (whatever that might possibly mean, since patent "claims" are not infringed by other patent claims).

## IV. CONCLUSION

The allegations in the Complaint are more than sufficient to state claims of indirect and willful patent infringement by Evertz, and direct infringement of the '659 patent. For the foregoing reasons, Cascades respectfully requests that this Court deny Evertz's motion to dismiss in its entirety.[6]

Dated: November 5, 2018

Respectfully submitted,

/s/ Robert P. Greenspoon

Robert P. Greenspoon (rpg@fg-law.com)
William W. Flachsbart (wwf@fg-law.com)
Michael R. La Porte (mrl@fg-law.com)
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Ave., Suite 2700
Chicago, Illinois 60601
(Tel.): 312-551-9500
(Fax): 312-551-9501
*Attorneys for Plaintiff, Cascades AV, LLC*

---

[6] While Cascades believes that the Complaint adequately provides Evertz notice under Rule 8 of the essential elements of its claims, if this Court finds that more allegations are necessary, Cascades respectfully requests that this Court permit it to amend its complaint accordingly. Evertz suggests that leave to amend should not be available because Cascades declined the opportunity to amend that it previously informed the Court it would take. (ECF#40, at 1). However, it was clear that Cascades "would take" that opportunity if either (1) Evertz convinced Cascades that amendment was necessary to plug a pleading defect (which did not happen), or (2) if the Court ruled that a pleading defect actually exists (which has also not happened).

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that service of the foregoing document was made on all counsel of record on November 5, 2018 *via* the court's CM/ECF system.

/s/ Robert P. Greenspoon
Robert P. Greenspoon
