IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASCADES AV LLC, | |
| Plaintiff, | Case No. 17-cv-7881 |
| v. | Judge Thomas M. Durkin |
| EVERTZ MICROSYSTEMS, LTD, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**

Andrew D. Campbell
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
acampbell@novackmacey.com
rparker@novackmacey.com
*Local Counsel for Defendant*

Thad A. Davis (*admitted pro hac vice*)
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8300
tdavis@gibsondunn.com

Elizabeth R. Brannen (admitted *pro hac vice*)
STRIS & MAHER LLP
725 S Figueroa St., St 1830
Los Angeles, CA 90017
Telephone: (213) 995-6809
Facsimile: (213) 995-2708
elizabeth.brannen@strismaher.com

**INTRODUCTION**

Cascades asks to be excused from pleading plausible claims. Determining whether a complaint satisfies the plausibility threshold "is a context-specific task" that requires "the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, the Complaint and Opposition confirm that even after Evertz thought it purchased peace in 2008, Cascades (and predecessors) continued flooding Evertz with meritless infringement claims, repeatedly invoking patents Evertz had *already licensed*. This undisputed history shows that Cascades is absolutely trying to "take back that for which [it] has already received consideration." ECF No. 40, Def.'s Mem. in Supp. of Mot. to Dismiss ("Mem.") at 5 (citing ECF No. 31, at 12). Cascades' problem is not merely the absence of alleged facts. Its own allegations undermine its direct infringement claim for the '659 Patent and negate the plausibility of its indirect and willful infringement claims for all three patents.

The following facts are alleged or properly treated as incorporated into the Complaint.

- Evertz, which has its own lip sync patents, has licensed numerous Cooper patents that claim aspects of lip sync technology, including the closely related '281 Patent, Compl.¶¶ 7-8, 41, Compl. Ex. A; *see also* Order, ECF No. 31, at 2-4, 6, nn.1, 3;

- Cascades and its predecessors have consistently asserted that Evertz practices the claims of patents that Evertz *has already licensed*, including the '033, '281, and '295 Patents, Mem. Exs. A-C, E, ECF No. 40-1; *see also* Order, ECF No. 31, at 11 n.6.

- Cascades and its predecessors have refused to recognize the terms of Evertz's license and repeatedly directed baseless infringement claims at Evertz, Mem. Exs. A-C, E, ECF No. 40-1.

These facts do not support *any* inference of infringement, much less that Evertz acted with the knowledge required for indirect and willful infringement. To survive dismissal, the Court must find that Cascades has pleaded other facts sufficient to make it plausible, not merely possible, that

Evertz is liable. As explained below, Cascades has not. At a minimum, Cascades cannot assert a claim of willful infringement for the '723 or '945 Patents prior to August 30, 2017.

## ARGUMENT

### A.  Cascades misstates the pleading standard.

To avoid dismissal of its threadbare allegations, Cascades invokes pre-*Iqbal* precedent and misquotes *Twombly* to suggest that a complaint need *only* give "fair notice" of a claim. ECF No. 46, at 4. But the Supreme Court has made clear that a complaint must also allege sufficient facts to state a plausible claim for relief, not one that is merely possible or conceivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007). Although detailed facts are not required, plausibility is a meaningful threshold requirement that demands "careful judicial consideration" to "weed out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).

Cascades hopes to avoid this careful review, contending that *Twombly* "did not change the pleading requirements…in a patent infringement case," ECF No. 46, at 5, and that Evertz does not understand "the level of pleading specificity required," *id.* at 1. Cascades is wrong. The *Iqbal/Twombly* plausibility standard applies in all civil actions. *Iqbal*, 556 U.S. at 684. There are no special rules for patent cases.[1] As in any case, a complaint alleging patent infringement survives

---

[1] Although the Federal Circuit for a period of time indicated that Form 18 controlled claims of direct infringement, with the abrogation of Form 18 in 2015, "the *Twombly–Iqbal* canon's unstoppable force" applies to these claims as well. *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016), *aff'd*, 686 F. App'x 921 (Fed. Cir. 2017). The Supreme Court has repeatedly rejected efforts to apply unique procedural rules in patent cases. *See, e.g., eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 395 (2006) (rejecting Federal Circuit's unique "categorical rule" favoring injunctions in infringement cases); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (rejecting clear-and-convincing evidence standard for fee-shifting purposes; noting that preponderance standard generally applies in civil cases and to other fee-shifting statutes); *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) (reversing Federal Circuit's use of *de novo* review under § 285; noting that traditionally "decisions on matters of discretion are reviewable for abuse of discretion" (quotations

dismissal only if the facts alleged are sufficient to nudge the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Allegations that are merely consistent with liability are not enough. *Id.* at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claim fails. *Id.* at 679.

The Federal Circuit's decision in *Disc Disease* does not (and, of course, cannot) change the Supreme Court's *Iqbal/Twombly* standard. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1257-58, 1260 (Fed. Cir. 2018). *Disc Disease* assessed whether particular allegations were adequate where the matter involved "simple technology:" a spinal brace with physical attributes. *Id.* at 1258-60. The complaint included photographs of the accused products—visually rendering it plausible to conclude that they possessed the claimed characteristics. *Id.* Here, Cascades accuses sophisticated, non-physical electronic technology without alleging supporting facts in words or images. *Disc Disease* does not hold that a boilerplate allegation that an accused product meets "each and every element of at least one claim" suffices in any patent case. *Id.* Controlling precedent could not be clearer that mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The *facts* alleged, not merely the conclusions or assertions, must be sufficient to support a reasonable inference that the defendant is liable. *Id.* at 556.[2] The Federal Circuit reiterated this point after *Disc Disease*: "To meet the

---

omitted)). And as the discussion *infra* makes clear, the courts of this district have recognized the plausibility requirement as well.

[2] Cascades also points to this Court's decision in *EZ Stak*, but *EZ Stak* addressed "highly detailed" counterclaims, which included allegations that the defendant had produced "copycat" shelving systems for specific customers and displayed them at trade shows and also included "descriptions of the relevant patent, descriptions and labeled drawings of the allegedly infringing products and their infringing features, and images of allegedly infringing products" taken from the defendant's website. *EZ Stak, LLC v. Dejana Truck & Util. Equip. Co*., LLC, No. 17 C 8742, 2018 WL 2933603, at *1-3 (N.D. Ill. June 12, 2018). The allegations here do not approach that level of factual detail.

plausibility standard, a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Merely pleading facts that are consistent with liability or stating legal conclusions is not sufficient." *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Dismissal was warranted in *Artrip* because the facts alleged were "insufficient to state a plausible, rather than merely possible, claim for relief." *Id.* So too here.

**B.      The Complaint does not plausibly allege direct infringement of the '659 Patent.**

Cascades has not alleged facts that make it plausible to conclude that any of the litany of Accused Products practices one of the required limitations: step c of asserted claim 1. As Evertz explained in its opening brief, step c requires determining *whether* a particular output signal is *a version of* a particular input signal. *See* Mem. at 9-10. Such a determination potentially distinguishes the '659 Patent from what Evertz licensed in 2008 because it entails determining whether input and output signals are versions of the same signal as opposed to merely calculating relative delay in signals that are supposed to match (and thus should be synchronized).[3] Instead of identifying facts alleged in the Complaint that could plausibly establish that any accused product performs step c, Cascades offers two responses. Neither is persuasive.

First, Cascades suggests that the Court must simply accept its assertion that IntelliTrak-equipped products practice step c. ECF No. 46, at 13-14; Compl. ¶ 48. Not so. In fact, for purposes

---

[3] Cascades does not dispute that its current allegations mimic its previous assertions regarding the closely related and already licensed '281 Patent. In pre-suit correspondence, Cascades asserted that IntelliTrak practices the method disclosed in the '281 Patent on the same grounds that it now rests for the '659 Patent. *See* Mem. Exs. A-C, ECF No. 40-1. Indeed, Cascades employed virtually the same "comparison" language: analyzing "content at an origin point and then comparing that to a final destination point," with reference to "fingerprints." *See e.g., id.* Mem. Ex. C at pp. 79-80 of 133. Cascades is wrong to suggest that this point is an attempt to impose a heightened pleading burden. *See* ECF No. 46, at 14. Parroting the exact same allegation cannot support a reasonable inference that IntelliTrak infringes the '659 Patent, which requires a specific step (step c) that is not required by the '281 Patent.

of Evertz's motion, the Court should disregard the conclusory assertion that "Evertz Accused Products practice this third limitation." Compl. ¶ 48; *see Iqbal*, 556 U.S. at 678, 681 ("threadbare recitals" of claim's elements and "conclusory statements" are not accepted as true; rejecting "bare assertions" of discrimination); *see also Twombly*, 550 U.S. at 555. For the Court to draw a reasonable inference that Evertz has infringed, Cascades must allege *facts* that render its infringement claim plausible. And here, that means plausibly alleging that IntelliTrak-equipped products practice each limitation of claim 1. *See, e.g., Pressure Specialist, Inc. v. Next Gen Mfg., Inc.*, No. 17-CV-6582, 2018 WL 572834, at *3 (N.D. Ill. Jan. 24, 2018) (noting that *Twombly-Iqbal* requires plaintiffs "to set forth sufficient facts to plausibly allege that the accused product embodies every limitation in a particular asserted claim" because "failure to meet a single limitation is sufficient to negate infringement" (quotation omitted)); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-CV-1067, 2017 WL 1197096, at *3 (N.D. Ill. Mar. 31, 2017) ("Courts applying the *Twombly-Iqbal* standard to patent infringement claims have required plaintiffs to set forth sufficient facts to plausibly allege that the accused product embodies every limitation in a particular asserted claim."); *Atlas*, 189 F. Supp. 3d at 775 ("[F]actual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement—they are merely compatible with infringement…").

Neither *Disc Disease* nor *EZ Stak* hold otherwise. In those cases, the claimants had alleged *facts* that made their respective claims plausible, *viz.*, pictures of accused products paired with patents disclosing simple technology, *Disc Disease*, 888 F.3d at 1260, and allegations that the accused infringer promoted and contracted to sell copycat mechanical shelving products after bidding using the drawing submitted with the patentee's bid, *EZ Stak*, 2018 WL 2933603, at *1-3. *See also Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, No. CV 17-1086-LPS, 2018

5

WL 5669168, at *12 (D. Del. Sept. 1, 2018) (noting that in *Disc Disease*, allegations were sufficient for court to "figure out on its own why it is that the accused product, or methods of using it, necessarily implicates" the claim limitations). In stark contrast, Cascades has not alleged facts that make its claim plausible with respect to step c of the '659 Patent.

Second, Cascades wrongly contends that its Complaint states sufficient factual allegations about step c. Again, to satisfy step c, an accused product must compare versions of two different signals. Specifically, step c requires determining "*if* a version of [a] first input signal *is being output* from [a] first processing circuit *as [a] first output signal*." Compl. ¶ 47 (emphasis added). The Complaint alleges nothing of the sort. With respect to step c, Cascades alleges only that the Accused Products "analyze fingerprints from the origin point and fingerprints from the destination point and compare them *for purposes that include lip sync error measurement.*" Compl. ¶ 48 (emphasis added). The Complaint defines lip sync error as "processing delay of a signal that has become unsynchronized with other signals." Compl. ¶ 1. That has nothing to do with version comparison. *See* Mem. at 4. Cascades never refutes this point.

Nor may Cascades rescue its complaint by deeming it "natural" to conclude that the alleged fingerprint comparison for lip sync error management purposes includes "determin[ing] whether the output signal used for generating that fingerprint is a version of the input signal used for generating the other fingerprint." ECF No. 46, at 13-14.[4] This assertion lacks factual support, and the definition of lip sync error in the Complaint directly refutes it. The Complaint says exactly what Cascades means by lip sync error management, and it plainly does not entail version

---

[4] Cascades' LPR 2.2 infringements are irrelevant to the sufficiency of its Complaint. Cascades' reference to additional facts supposedly cited in them at best underscores the deficiency of its pleading. Nor do "cross correlation" or a "sliding technique" substantiate anything about a step for determining whether one signal is a version of another.

6

comparison. As a result, Cascades is wrong to suggest that Evertz's motion requires claim construction. Moreover, courts routinely make determinations at the pleading stage about what certain patent claim language obviously does not cover. *See, e.g.*, *Atlas*, 189 F. Supp. 3d at 774 ("Atlas is therefore entirely incorrect in stating that claim construction cannot be engaged in at all at the motion to dismiss stage"); *cf. Midwest Innovative Prod., LLC v. Kinamor, Inc., No. 16 CV 11005,* 2017 WL 2362571, at *5 (N.D. Ill. May 31, 2017) (noting that dismissal was warranted in *Atlas* because "no reasonable claim construction would have allowed the plaintiff to state a claim for patent infringement"). In short, Cascades invites speculation that its claim is conceivable; the Complaint does not make its claim plausible.

**C.    Cascades has not plausibly alleged willful or indirect infringement.**

Cascades' allegations regarding pre-suit communications and notice are materially incomplete and misleading. Cascades alleges that Evertz "disregard[ed]" and "ignor[ed]" Cascades and its predecessor for years. *E.g.,* Compl. ¶¶ 34, 53, 68; ECF No. 46, at 10. But the letters show that Cascades and its predecessor repeatedly accused Evertz of infringing patents Evertz had previously licensed, including the '033, '281, and '295 patents. Mem. Exs. A, D, E, F, G, ECF No. 40-1. And Cascades did not even mention two of the Asserted Patents in this case, the '723 and '945 patents, until August 30, 2017—just two months before filing suit. Even then, Cascades offered only a passing assertion that the patents were "applicable to various Evertz products." Mem. Ex. G, at 1. It did not provide any explanation, or even identify specific products. This passing reference was the first and only pre-suit notice of these two patents.

**1.** Indirect infringement and willfulness require, as a matter of law, knowledge of both the patent and infringement. Mem. at 11. Cascades is wrong to suggest that it need not allege pre-suit knowledge. *See, e.g., Valmont Indus., Inc. v. Lindsay Corp.,* No. 15-042-LPS-CJB, 2018 WL

7

503255, at *4 n.8.[5] Cascades accordingly has no arguable claim for willful or indirect infringement of the '723 and '945 patents prior to August 30, 2017.[6]

Cascades' claims of willful and indirect infringement also fail because neither the August 30, 2017 notice letter nor any other allegations in the Complaint supports an inference that Evertz had knowledge of alleged infringement prior to suit being filed. It is not the case that any allegation of pre-suit notice, however brief, is sufficient to plead the knowledge of *infringement* necessary to support claims for indirect and willful infringement. The allegation is particularly deficient given that Cascades made no effort to provide a claim chart for any claim asserted in the complaint or to identify specific accused products with respect to the '723 and '945 Patents. Indeed, it is telling that Cascades crafted the Complaint to suggest that Evertz received multiple "notices" and knew of those two patents for years, as opposed to a mere eight weeks. *See* Compl. ¶¶ 53, 68 (alleging that "Evertz has refused to respond in good faith to Cascades' notices and attempts to discuss the Cooper Patents or the possibility of licensing them.").

Because the letters are properly treated as incorporated into the Complaint, the Court should disregard any inconsistent allegations, including those that supposedly support its claims of willful infringement. *See, e.g., Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."); *Jackson v. City of Chicago*, No. 96 C 3636, 1996 WL 734701, at *4 n.7 (N.D. Ill. Dec. 18, 1996). It is settled law that in considering a

---

[5] Cascades cannot rely on post-suit knowledge, because it has not amended its complaint to assert any claims regarding post-suit conduct. *Cf. Trading Techs. Int'l, Inc. v. BCG Partners, Inc.,* No. 10 C 715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011) (holding that amended complaint could rely on post-suit knowledge for indirect infringement post-dating suit).

[6] As Evertz requested and Cascades did not oppose, the Court should consider the letters referenced in the Complaint. Mem. at 2 n.1; Mem. Exs. A-G.

motion to dismiss, the court may consider facts set forth in the complaint (or incorporated exhibits) "that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quotation omitted).

Moreover, Cascades' targeting of Evertz with false infringement allegations further undermines any inference that Evertz had knowledge of infringement. *Iqbal* dictates consideration of context. Given the undisputed background, the Court cannot reasonably infer that Evertz had knowledge of the alleged infringement eight weeks after Cascades made a passing reference to these two patents. *See, e.g., See Valmont*, 2018 WL 503255, at *4 n.8 (D. Del. Jan. 22, 2018) ("[A] plaintiff alleging that it is plausible that a defendant had knowledge of its infringement as of a particular date must do more than simply allege facts rendering it plausible that as of that date: (1) a defendant knew of the patent claims and (2) happened to infringe at least one of them. There also has to be some facts alleged that show why it is plausible that, as of that date, the defendant *knew that it infringed*.")(emphasis in original)).

**2.** Cascades' willfulness claim as to all three patents is inadequate because a plaintiff claiming willful infringement must allege facts that plausibly support an inference that the defendant engaged in egregious conduct. Mem. at 14-15 (collecting cases). To the extent courts have held otherwise, those decisions disregard *Iqbal's* requirement that a plaintiff allege sufficient facts to make a claim *plausible*, not merely possible.

Here, too, Cascades' own allegations about the prior licensing agreements and notice letters asserting baseless infringement claims negate any plausible inference of egregious conduct. Cascades' demands for Evertz to pay a second time to license patents covered by the release shows that its conduct was unreasonable and predatory. That fact necessarily, and reasonably, shades any

9

assessment of Evertz's response. The Court cannot plausibly infer that Evertz behaved egregiously.

**3.** Cascades' indirect infringement claims suffer other fatal deficiencies. Cascades asks this Court to excuse it from alleging *any facts* that could plausibly show active inducement or lack of substantial non-infringing uses. If *Iqbal*/*Twombly* has any meaning, that is not the right result.

Cascades' reliance on Fed. R. Civ. P. 9(b) conflicts with *Iqbal*. In *Iqbal*, the Supreme Court expressly held that Rule 9(b), which allows intent and knowledge to be pleaded "generally," means only that such allegations need not satisfy the heightened pleading standards that apply to fraud. Rule 9(b) does not change *Iqbal*'s plausibility requirement nor permit conclusory allegations. *Iqbal,* 556 U.S. at 687 (plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss"). Cascades suggests that the Court should simply assume facts not pleaded to conclude that Evertz intended its customers to infringe. Mem. at 13. That is not how the pleading standard works.

For similar reasons, Cascades' conclusory assertions of contributory infringement fail. Cascades' argument is circular: it has alleged that IntelliTrak infringes, therefore the Court must infer the absence of substantial non-infringing uses. ECF No. 46, at 11-12. The Complaint, however, does not supply any facts to support that inference. *See generally* ECF No. 1. *Ricoh Co. v. Quanta Computer Inc*., 550 F.3d 1325, 1337 (Fed. Cir. 2008) does not address the pleading standard or relieve Cascades of the obligation to plead such facts.

## CONCLUSION

Evertz respectfully requests that the Court: (a) dismiss Cascades' allegations of direct infringement of the '659 Patent and of indirect and willful infringement for all three asserted patents; and (b) grant it such other and further relief as the Court deems just.

Respectfully submitted,

EVERTZ MICROSYSTEMS, LTD

Dated:  November 29, 2018                By:   /s/ Elizabeth R. Brannen

11

## **CERTIFICATE OF SERVICE**

Rebekah H. Parker, an attorney, hereby certifies that, on November 29, 2018, she caused a true and correct copy of the foregoing ***Defendant's Reply Memorandum in Support of Its Motion to Dismiss for Failure to State A Claim***, to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

    /s/ Rebekah H. Parker