# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CASCADES AV LLC,                            )
                                            )
    Plaintiff,           )
                                            )    No. 17 CV 7881
    v.                   )
                                            )    Judge Thomas M. Durkin
EVERTZ MICROSYSTEMS LTD,                    )
                                            )
    Defendants.          )

## MEMORANDUM OPINION AND ORDER

Cascades AV LLC sued Evertz Microsystems LTD for allegedly infringing three of Cascades' patents covering improvements in detecting and correcting the processing delay of a signal that has become unsynchronized with related signals (i.e., correcting "lip sync error"). Evertz moves to dismiss certain of Cascades' claims under Federal Rule of Civil Procedure 12(b)(6). R. 38. For the following reasons, the Court denies Evertz's motion.

## Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed

factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Cascades' predecessor in interest, James Carl Cooper, has patented more than 80 inventions in the field of audio and video technology. R. 1 ¶ 1. Evertz is a competitor in that field and has at least one of its own patents. *See id.* ¶¶ 13-14. In 2007 and 2008, Evertz entered into three agreements with Cooper and two related licensing entities to settle a prior infringement dispute involving "a different family of [Cooper] patents" than the patents at issue here. *See id.* ¶¶ 7-8.

One such agreement—the Mutual Release and Covenant Not to Sue entered into by Cooper and Evertz on March 10, 2008 ("Cooper Agreement")—binds third-parties to whom "Cooper assigns or licenses any of the Cooper patents." R. 1-1 ¶ 9. The Cooper Agreement contains two provisions that read together state that Cooper covenants not to bring lawsuits "based upon or arising out of any Cooper Patent,"

where "Cooper Patent" is defined as "any existing patent" meeting certain criteria. *Id.* ¶¶ 2, 4.[1]

In February 2009, Evertz launched its IntelliTrak product line—the allegedly infringing products in this case—that "monitor lip sync information for excessive errors." R. 1 ¶¶ 5-6, 35. Then, in 2014, Cascades was formed to "help . . . Cooper benefit from the licensing of his lip sync error correction inventions." *Id.* ¶¶ 1, 15. Between August 2014 and June 2017, Cascades obtained the three patents designed to correct lip sync error at issue in this case:  U.S. Patent Nos. 8,810,659 (" '659 patent"), 9,071,723 (" '723 patent"), and 9,692,945 (" '945 patent) ("patents-in-suit"). R. 20-1.[2]

Beginning in 2014 and continuing through the filing of this lawsuit, Cascades tried to engage Evertz in licensing discussions related to Evertz's IntelliTrak products, invoking the patents-in-suit and related patents. R. 1 ¶¶ 15-34. In the back-and-forth, Evertz declined to negotiate licenses, citing the release in the Cooper Agreement. *Id.* ¶¶ 18-34.

Specifically, on July 2, 2014, Cascades wrote to Evertz's counsel seeking a response to Cascades' predecessor in interest Watonga Technology, Inc.'s letter to Evertz regarding infringement of certain Cooper patents. Evertz responded on July

---

[1] The Court's August 20, 2018 opinion denying Evertz's initial motion to dismiss on the then-current record contains additional background facts regarding the Cooper Agreement. R. 31.

[2] Although the patents-at-issue are not attached to the complaint, it is "well-established that a court may take judicial notice of patents or patent applications." *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932, n.3 (Fed. Cir. 2014).

9, 2014, pointing to the Cooper Agreement and suggesting Cascades' counsel speak to Cooper. *Id.* ¶¶ 12-16. On July 17, 2014, Cascades' counsel responded by asserting that the Cooper Agreement did not apply, since the IntelliTrak products came into being after the parties entered into the Cooper Agreement, and asking for a substantive response to the infringement notice and licensing invitation. Evertz did not respond. *Id.* ¶¶ 17-18.

On September 5, 2014, Cascades wrote to Evertz's counsel again seeking a substantive response.[3] That letter included Cascades' first notice of infringement of a patent-in-suit: the '659 patent, entitled "Delay and Lip Sync Tracker," which issued on August 19, 2014. *Id.* ¶ 19. Evertz's counsel acknowledged the communication and committed to responding in "several weeks," but did not respond. *Id.* ¶ 20.

On May 8, 2015, Cascades' counsel wrote to Evertz's counsel again, seeking a reply to Cascades' license offer. Evertz did not respond. *Id.* ¶¶ 21-22.

On November 5, 2015, Cascades' counsel telephoned Evertz's counsel to resume discussions. Evertz's counsel indicated that he had not yet studied the Cooper Agreement, despite that he had pointed to it in its July 9, 2014 written response.

---

[3] The complaint and Evertz's motion to dismiss recount the back-and-forth between the parties regarding the patent dispute giving rise to this lawsuit. Evertz's motion attaches written communications between the parties regarding the dispute, and Cascades relies upon the communications in its complaint. *See* R. 40-1 (exhibits); R. 1. ¶¶ 12-34. Such correspondence is therefore properly considered here. *See Venture Assocs. Corp. v. Zenith Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

Evertz's counsel requested until the following week to respond, but again did not. *Id.* ¶¶ 23-24.

On December 16, 2015, Cascades' counsel again contacted Evertz's counsel asking for a response. Evertz's counsel responded the next day promising to respond by "early in the new year." Cascades did not receive a response. On January 15, 2016, Cascades' counsel wrote to Evertz's counsel to set up a time to discuss the matter. Evertz agreed to meet and get back in touch the following week, but again did not do so. *Id.* ¶¶ 25-27.

On January 26, 2016, Cascades' counsel asked for an update, to which he received no reply. Then, on February 18, 2016, Cascades' counsel wrote again, indicating that Cascades was "frustrated with the length of time it has taken to begin communicating on the topic of licensing. It would be in Evertz's best interests to respond very soon, starting with a monetary license offer." *Id.* ¶¶ 28-29.

On March 6, 2016, Evertz responded by letter. Evertz's counsel again pointed to the Cooper Agreement as precluding Cascades from suing Evertz for "any patent related issue in the future or assisting any such proceeding," and describing Cascades' reading to the contrary as "limited and very technical," and "antithetical to the intent of the parties." *Id.* ¶ 30.

On August 30, 2017, Cascades wrote to inform Evertz of a related settlement with another accused infringer, and requesting to restart discussions, "proposing one final time to resolve this matter with Evertz without the need for litigation." In addition to disputing and responding in substance to Evertz's reading of the Cooper

Agreement, the letter included a notice of infringement of and offer to license the '945 patent (entitled "AV Timing Measurement and Correction for Digital Television," and issued two months earlier on June 27, 2017). The letter separately indicated that since the date of the Cooper Agreement, "the following U.S. patents have issued and are applicable to various Evertz products," listing, among others, the '945 and '723 patents (the latter, like the former, entitled "AV Timing Measurement and Correction for Digital Television," and issued on June 30, 2015). The letter noted that the listed patents covered "not only lip sync detection but also the mere generation of markers without limitation to their use." *Id.* ¶¶ 31-32; R. 40-1, Exhibit G, p. 1. This letter was the first communication between the parties specifically discussing the '723 and '945 patents.

In a September 19, 2017 telephone call, Evertz's counsel indicated to Cascades' counsel that he had been "instructed to prepare a response" to the August 30, 2017 letter. Then, on October 16, 2017, Evertz's counsel expressed to Cascades' counsel his "hope" to be in a position to respond after returning from Europe. But Evertz did not respond. R. 1 ¶ 33.

At no time during the years-long back-and-forth between the parties did Evertz deny infringing the patents-in-suit or any other Cooper patent.

In November 2017, Cascades filed this lawsuit asserting that the IntelliTrak products infringe on at least the patents-in-suit. *Id.* ¶¶ 37-77. Specifically, the complaint alleges that Evertz directly infringed, induced infringement of, and contributorily infringed the patents-in-suit through its IntelliTrak products and

technology, and identifies almost 50 allegedly infringing products and product families ("Accused Products"). Cascades contends that such infringement was willful and deliberate. *See generally id.* Cascades seeks compensatory damages, prejudgment interest and statutory costs, relief under 35 U.S.C. §§ 154, 284 and 285, and a permanent injunction prohibiting "further infringement, inducement and contributory infringement" of the patents-in-suit. *Id.* at 20.

On August 20, 2018, the Court issued an opinion denying Evertz's January 22, 2018 motion to dismiss the complaint in which it argued that it has a license—either express or implied—to practice the patents-in-suit. R. 31. The Court determined that Evertz did not have an express license to practice the patents-in-suit, but noted that while the then-current record did not support a finding on the implied license issue as a matter of law, Evertz could re-raise the argument if discovery revealed a basis for it. In that opinion, the Court also discussed but declined to address the merits of Evertz's underdeveloped, footnoted argument that Cascades' complaint should be dismissed for failure to plausibly plead infringement. In suggesting that Evertz make the argument in a separate motion if appropriate, the Court instructed Evertz to consult with Cascades before filing such a motion to give Cascades an opportunity to amend. *Id.* at 18-19. Cascades did not file an amended complaint, and Evertz followed with this motion.

**Analysis**

Evertz moves to dismiss Cascades' claims for direct infringement of the '659 patent, and the infringement by inducement, contributory infringement, and willful infringement claims for each of the patents-in-suit. R. 40.

Patent complaints must "contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed." *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015). But as the Federal Circuit recently explained when reversing an order dismissing patent infringement claims under *Twombley* and *Iqbal*, "[s]pecific facts are not necessary"; the opposing party need only be given "fair notice of what the [infringement] claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2017). In other words, a party alleging patent infringement need not " 'prove its case at the pleading stage.' " *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012) (warning against requiring a "level of factual specificity" in pleading patent infringement that "would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage")).

## I.     Direct Infringement of U.S. Patent No. 8,810,659

Evertz first argues that the Court should dismiss Cascades' claim for direct infringement of the '659 patent because the complaint "includes *no facts* from which this Court may plausibly conclude that Evertz (or anyone else) using the Accused

8

Products practices one of the required claim limitations: step c of the claimed method [of exemplary claim 1]." R. 40 at 9 (emphasis in original). To allege a direct infringement claim, the accused product must "embody each limitation of a patent claim either literally or under the doctrine of equivalents." *See, e.g., TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1377-79 (Fed. Cir. 2008) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).

The '659 patent is entitled "Delay and Lip Sync Tracker," and claim 1 provides that it is:

> A method of tracking an audio or video signal having an active portion which signal is selected from a plurality of signals for at least its active portion to be passed through a first processing circuitry in a television system, said method including the steps of:
>
> a) In response to artifacts already present in the active portion of an electronic first input signal which is input to a first processing circuit, associating a plurality of first input delay trackers with said first input signal, each said first input delay tracker corresponding to at least one said artifact of said first input signal.
>
> b) in response to artifacts in a first output signal from said first processing circuit, associating a plurality of first output delay trackers with said first output signal, each said first output delay tracker corresponding to at least one said artifact of said first output signal.
>
> c) in response to a plurality of said first input delay trackers and a plurality of said first output delay trackers, determining if a version of said first input signal is being output from said first processing circuit as said first output signal.

R. 1 ¶¶ 41, 43, 45, 47; R. 40-1, Exhibit H.

The complaint alleges as to claim 1(c)—the sole claim limitation Evertz identifies as inadequately pleaded—that:

> Evertz Accused Products practice this third limitation. These products analyze fingerprints from the origin point and fingerprints from the destination point and compare them for purposes that include lip sync error measurement.

R. 1 ¶ 48.

Evertz contends that this allegation lacks sufficient factual detail to support a finding that it is plausible that the Accused Products practice claim 1(c). R. 49 at 4-7. Evertz points to the complaint's characterization of "lip sync error" as concerning "processing delays in signals that have become unsynchronized where it is known that the content is supposed to match, 'such as when audio and video become unsynchronized.'" R. 40 at 9 (quoting R. 1 ¶ 1). Evertz argues that in no way has Cascades pleaded that lip sync error measurement—so characterized—entails any determination of whether an output signal is a version of an input signal, and thus that Cascades has not alleged facts to suggest that IntelliTrak makes version determinations as an infringement claim concerning claim 1(c) would require. *Id.*

In response, Cascades asserts that its allegation that Evertz equipment performs a comparison between input and output fingerprints plausibly supports that Evertz equipment "'determines' whether the output signal used for generating that fingerprint is a version of the input signal used for generating the other fingerprint," and that "the most natural way for a 'determination' to be made whether one thing is a version of another is to 'compare' something about them." R. 46 at 13-14 (quoting R. 1 ¶¶ 47-48). Cascades contends that the complaint thus "went above and beyond" by including limitation-by-limitation factual allegations as to named Evertz products containing IntelliTrak, including regarding claim 1(c). *Id.* at 13.

The Court agrees that Cascades' allegations are satisfactory. There is no dispute that both the '695 patent and the Accused Products concern lip sync error detection and analysis. There is likewise no dispute that the complaint alleged facts to demonstrate how the Accused Products infringed the '695 patent. That is enough. First, Evertz's dispute over the complaint's characterization of "lip sync error" and factual allegations regarding claim 1(c) are of no moment at this stage, as the Court must give claim 1(c) its broadest construction. *See Bill of Lading*, 681 F.3d at 1343, n.13 (claims of the patent in a patent infringement case are afforded "their broadest possible construction" on a motion to dismiss); *Agarwal v. Topgolf Int'l, Inc.*, 2017 WL 40804, at *5 (M.D. Fla. Jan. 4, 2017) (denying motion to dismiss because at motion to dismiss stage, "claims are given their broadest construction"). In so doing, the Court finds the allegations sufficient to support Cascades' claim that Evertz equipment infringes by determining, through comparison, whether the output signal used for generating one fingerprint is a version of the input signal used for generating the other fingerprint.

Next, the complaint's factual allegations are more than the Federal Circuit requires in any event. In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of an infringement claim in which the complaint specifically identified the accused infringing products and included only a *general* allegation that the allegedly infringing products "meet each and every element of at least one claim of Plaintiff's patents." 888 F.3d at 1260. The court reasoned that these allegations were "enough to provide . . . fair notice of infringement of the asserted patents" and thus were

"sufficient under the plausibility standard of *Iqbal/Twombley*." *Id.* Here, although Evertz attempts to distinguish *Disc Disease* on the basis that it concerned a "simple technology" as opposed to the "sophisticated, non-physical electronic technology" in this case, the complaint goes beyond what the *Disc Disease* court required in alleging facts to explain *how* the Accused Products allegedly practice each limitation, including claim 1(c). *See* R. 49 at 3; R. 1 ¶¶ 36, 44, 46, 48.

Evertz also points to the Federal Circuit's recent decision in *Artrip v. Ball Corporation*,735 F. App'x 708 (Fed. Cir. 2018) to support its argument that Cascades' complaint must fail. R. 49 at 3-4. But the court in *Artrip* dismissed the complaint on distinguishable facts, including that the plaintiff had not yet identified the allegedly offending machines, despite having filed three amended complaints. 735 F. App'x at 714-15 (affirming dismissal for failure to sufficiently identify, "for example, by photograph or name, any of the particular machines that allegedly infringe" "unlike the plaintiff in *Disc Disease*").

Thus, giving claim 1(c) its broadest construction, and because the complaint identifies the IntelliTrak products at issue, and alleges—supported by factual allegations—that such products meet each and every element of claim 1 of the '695 patent, the Court denies Evertz's motion to dismiss the direct infringement claim.[4]

---

[4] The Court declines to consider Evertz's argument that its license over Cascades' allegedly similar U.S. Patent No. 6,351,281 renders insufficient Cascades' pleading of its direct infringement claim as to the '659 patent. R. 40 at 6, 11; R. 49 at 5, n.3. U.S. Patent No. 6,351,281 is not part of this lawsuit.

## II.  Indirect Infringement and Claims for Enhanced Damages

Evertz also argues that Cascades' indirect infringement and enhanced damages claims fail as a matter of law. R. 40.[5] The Court addresses each of Evertz's arguments to this effect in turn.

### A.  Knowledge of U.S. Patent Nos. 9,071,723 and 9,692,945

Evertz argues at the outset that Cascades has failed to plead sufficient facts to establish Evertz's knowledge of patents '723 and '945 for purposes of Cascades' indirect and willful infringement claims. *Id.* at 11-12; R. 49 at 7-9. Whereas direct infringement is a strict-liability offense that does not require knowledge of the patent or intent to infringe, indirect infringement claims require knowledge of the patent itself in addition to infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (whereas "[d]irect infringement is a strict-liability offense" in which "a defendant's mental state is irrelevant," "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). An award for willful infringement likewise requires knowledge of both the patent and its infringement. *Velocity Patent LLC v. FCA US LLC*, 319 F. Supp. 3d 950, 971 (N.D. Ill. 2018) (willfulness turns on defendant's

---

[5] Evertz's motion to dismiss attacks each of Cascades' indirect infringement claims, but does not contend that Cascades' direct infringement claims as to either the '723 or the '945 patent were insufficiently pleaded. Accordingly, because indirect infringement cannot lie without an underlying act of direct infringement, the Court assumes from Evertz's silence that it concedes that Cascades has adequately pleaded direct infringement as to both patents. *Bill of Lading*, 681 F.3d at 1333 ("[t]here can be no inducement or contributory infringement without an underlying act of direct infringement") (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)).

"knowledge . . . of the patent and its infringement"). Yet pleading knowledge requires only allegations that the party inducing or contributing to infringement know of (or be willfully blind to the existence of) a patent, and that the product or activity at issue infringes. *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). It is arguably sufficient to plead that a notice of infringement was sent to the accused infringer, because implicit in this is the inference that such notice (1) notified a defendant of the existence of the patent and (2) informed them of the infringement. *Cascades Branding Innovent, LLC v. Walgreen Co.*, 2012 WL 1570774, at *3 (N.D. Ill. May 3, 2012).

Here, in addition to alleging Evertz had knowledge of the '723 patent "since its issuance on June 30, 2015," and of the '945 patent "since its issuance on June 27, 2017, and at least since August 30, 2017," Cascades alleged that it sent Evertz a letter dated August 30, 2017—just over two months before Cascades filed this lawsuit and just over two months after the issuance of the '945 patent. R. 1 ¶¶ 52, 67; R. 40-1, Exhibit G, p. 1. Although Evertz argues that the August 30, 2017 letter cannot suffice to establish its knowledge of the patents because it did not include a claim chart, did not specifically identify accused products, or provide notice well enough in advance of the filing of this lawsuit, the Court finds that the letter was sufficient to allege knowledge.

The August 30, 2017 two-page letter purported to be sent "to avoid the expense and inconvenience of litigating this matter," and stated that Cascades was "proposing one final time to resolve" the matter "without the need for litigation." R. 40-1, Exhibit

G, p.1. The letter identified the '723 and '945 patents (among others) as having been issued and "applicable to various Evertz products," and covering "not only lip sync detection but also the mere generation of markers without limitation to their use." *Id.* The letter indicated that such patents were not included in the Cooper Agreement entered into before such patents existed, and closed by providing separate and additional notice of the '945 patent, stating that Evertz would require a license to it, and that Cascades "is willing to include it in licensing negotiations." *Id.* at p. 1-2.

The Court finds the August 30, 2017 letter goes beyond the required showing of knowledge as to the '945 patent, because it contains both a notice of infringement and an offer to discuss a license, and at least impliedly accuses the IntelliTrak products. *Id.*; *Cascades Branding Innovent, LLC*, 2012 WL 1570774, at *3 (complaint went further than required, noting that notice of infringement "included an infringement claim chart . . . and a firm license offer to abate . . . infringement" (internal citations omitted)).

The Court likewise finds that Cascades pleaded sufficient knowledge as to the '723 patent. Although a closer case, the August 30, 2017 letter still met both requirements found sufficient in *Cascades Branding Innovent, LLC v. Walgreen Co.*. That the letter's stated intent was "to resolve the matter with Evertz without the need for litigation" and that it was the last in the seemingly endless years-long back-and-forth (with significantly more "forth" by Cascades than "back" by Evertz) between the parties regarding Cascades' license offers to patents allegedly infringed by IntelliTrak products further supports such a finding, and renders meritless Evertz's

objections that as of that date it could not have known that it was infringing. R. 40-1, Exhibit G., p. 1. Finally, Evertz's argument that Cascades' August 30, 2017 letter was "sent on the eve of litigation" and therefore "[a]t the absolute minimum," Cascades cannot assert any of its claims prior to that date does not change the result. R. 40 at 12. How an August 30, 2017 letter can be characterized as being sent on the "eve" of litigation filed on November 1, 2017 is puzzling. The Court finds that Cascades has pleaded knowledge sufficient to support its claims, and notes that any damages assessed will be determined based upon what discovery reveals about the precise timing as to when knowledge occurred. *See Radiation Stabilization Solutions, LLC v. Accuracy, Inc.*, 2012 WL 3621256, at *3-4 (N.D. Ill. Aug. 21, 2012) (knowledge adequately pleaded by identifying accused product and alleging defendant induced infringement at least as of date of filing, holding that defendants, "at the least, now know of the infringing nature of the machine," that "[plaintiff] appears to have provided at least the minimum amount of facts," and that damages would be limited accordingly).

The plausibility requirement "is not akin to a 'probability requirement at the pleading stage.'" *Lifetime Indus.*, 869 F.3d at 1380 (quoting *Bill of Lading*, 681 F.3d at 1341). The Court finds that Cascades plausibly pleaded Evertz's knowledge with respect to both the '945 and '723 patents.

## B. Induced Infringement

Next, Evertz contends that Cascades has not sufficiently pleaded its claims of induced infringement of the patents-in-suit. Infringement by inducement occurs

when an infringer "actively induces infringement of a patent." 35 U.S.C. § 271(b). To state a claim for infringement by inducement, then, in addition to pleading direct infringement and knowledge of the patent, Cascades must plead facts that "plausibly show[ ] that [Evertz] specifically intended [its] customers to infringe." *Bill of Lading*, 681 F.3d at 1339; 35 U.S.C. § 271(b). The Federal Circuit made clear in *Bill of Lading* that a plaintiff is not required to "allege facts that prove all aspects of its [infringement by inducement] claims" at the pleading stage. 681 F.3d at 1341. Allegations sufficient to give "rise to a reasonable inference that [the defendant] intend[ed] to induce [its] customers [to purchase an infringing product]" are sufficient. *Id.* (allegation that defendant advertised allegedly infringing products to customers coupled with a cease-and-desist letter showing defendant's knowledge of patents was more than enough).

All three of Cascades' induced infringement claims are identical but for the dates alleged. Each alleges that Evertz has knowingly and intentionally "actively aided, abetted, and induced others to infringe," and that "Evertz continues to induce infringement" of the patents-in-suit. R. 1 ¶¶ 39, 52, 67. The complaint also alleges that Evertz sells, offers for sale, distributes and/or imports products with the infringing features to its customers—including television networks—"in this judicial district and throughout the United States," and points to its use of such products at "various trade shows in the United States." *Id.* ¶¶ 2, 4, 35, 38-39, 51-52, 66-67.

Evertz argues that the complaint does not contain "*any* facts that could plausibly show active inducement" and is "utterly devoid of allegations regarding

advertising, instructional manuals, customer support or any other materials." R. 40 at 13; R. 49 at 10. But the Court finds the allegations sufficient to plead active inducement. From the facts alleged, it is reasonable to infer that Evertz has been inducing and continues to induce infringement because it knows of the infringing nature of the Accused Products and continues to sell and promote them, including by using them at trade shows. *See Radiation Stabilization Solutions LLC*, 2012 WL 3621256, at *4 (allegation that "on information and belief," defendants "are at least as of the date of the filing of this complaint inducing infringement of the [asserted] patent" and that "the [accused] product infringes the [asserted] patent" sufficient to support claim of induced infringement); *Trading Tech. Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 1706136, at *4 (N.D. Ill. May 5, 2011) ("reasonable to infer, at the motion to dismiss stage, that by selling infringing products and showing customers how to use them, [defendant] intended those customers to infringe"); *Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F. Supp. 2d 388, 411 (S.D.N.Y. 2007) ("the manufacture and sale of a patented product are by themselves sufficient to constitute active inducement under Section 271(b)").

Because Cascades alleged both that Evertz had knowledge of the patents— including through Cascades' August 30, 2017 letter—and that Evertz sells products with infringing features and uses them at trade shows, the Court denies Evertz's motion to dismiss Cascades' induced infringement claims.

## C.     Contributory Infringement

Evertz also asserts that Cascades has failed to plausibly plead its claims of contributory infringement of the patents-in-suit under Section 271(c). Contributory infringement occurs if "a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)). Here, Evertz takes issue with Cascades' allegations regarding the Accused Products' lack of substantial noninfringing uses. R. 40 at 13.

Again, all three of Cascades' contributory infringement claims are identical but for the dates of knowledge alleged. Each provides that Evertz has contributorily infringed because, with knowledge of the patent, Evertz "supplies a material part of a claimed combination, where the material part is not a staple article of commerce, and is incapable of substantial noninfringing use," and Evertz thus "supplies the technology that allows its customers to infringe the patent." R. 1 ¶¶ 39, 52, 67.

Evertz contends that "there is no plausible basis to infer the absence of substantial nonconforming uses" because Cascades merely "recites the legal standard" and "alleges no facts at all" regarding the requirement. R. 40 at 13. In response, Cascades contends that its allegation that "the IntelliTrak feature installed

into Evertz products causes such products to infringe,"[6] R. 46 at 11; R. 1 ¶¶ 2, 12, 35, 38, 51, 66, "gives sufficient context to the additional factual allegation that such products have no substantial noninfringing uses." R. 46 at 11; R. 1 ¶¶ 39, 52, 67.

Again, a plaintiff need not prove its case at the pleading stage, but must plead sufficient facts that lead to reasonable inferences supporting the plausibility of the allegations. *Bill of Lading*, 681 F.3d at 1331; *see Ashcroft*, 556 US. at 679; *Twombly*, 550 U.S. at 556. Generally, to state a claim for contributory infringement, a plaintiff "must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Bill of Lading*, 681 F.3d at 1337.

Cascades' allegations that Evertz "supplies a material part of a claimed combination, where the material part is not a staple article of commerce, and is incapable of substantial noninfringing use" appear to be mere conclusory recitals of the elements of the claim seemingly requiring dismissal. R. 1 ¶¶ 39, 52, 67. But numerous courts have allowed contributory infringement claims to proceed despite little to no factual support on lack of substantial non-infringing uses, due to the "obvious difficulty plaintiffs would face in pleading a negative without the benefit of

---

[6] The fact that IntelliTrak is embedded in a larger product does not in itself refute contributory infringement, and Evertz does not contend otherwise. *See Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) ("it does not follow . . . that the inclusion of a component with substantial noninfringing uses in a product that contains *other* components useful only to infringe a process patent can or should defeat liability for contributory infringement under § 271(c)"); *Lucent Techs. Inc.*, 580 F.3d at 1321 ("Here, the infringing feature for completing the forms, i.e., the date-picker tool, is suitable only for an infringing use. Inclusion of the date-picker feature within a larger program does not change the date-picker's ability to infringe.").

discovery." *Puget Bioventures, LLC v. Biomet Orthopedics LLC*, 325 F. Supp. 3d 899, 909 (N.D. Ind. 2018); *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 688 (E.D.N.Y. 2017) ("many courts post-*Iqbal* have not demanded detailed factual allegations that the defendants' products lack substantial noninfringing uses" (collecting cases)); *Bel Fuse Inc., et al., v. Molex Incorporated*, 27 F. Supp. 3d 557, 565-566 (D.N.J. 2014) (denying motion to dismiss where complaint alleged that defendants' products were "made for use in infringement and [were] not staple articles of commerce suitable for substantial non-infringing use").

Notably, in *Bill of Lading*—a case in which the contributory infringement claim was based on similar conclusory recitals—the court affirmed the dismissal of that claim not because of the conclusory recitals, but due to the "affirmative allegations of fact" of "repeated descriptions of non-infringing uses to which the accused products could be put." 681 F.3d at 1337-1338 ("Because the amended complaints actually make clear on their face that Appellees' products *do* have substantial non-infringing uses, R+L has not stated a claim "). The court even pointed out that "[i]mportantly, the district court did not conclude that the allegations of contributory infringement lacked sufficient detail to satisfy the specificity requirement of *Twombly* and *Iqbal.*" *Id.* at 1337; *see also Driessen v. Sony Music Entm't*, 2013 WL 4501063, at *2 (D. Utah, 2013) (finding *Bill of Lading* requires only that a plaintiff not undermine its allegation of no substantial non-infringing uses, and noting that it "does not establish a requirement for plaintiffs to plead a null set under . . . *Twombly* and *Iqbal*" and "it is impossible to plead with specificity something

that does not exist"); *EZ Stak, LLC v. Dejana Truck & Util. Equip. Co., LLC*, 2018 WL 2933603, at *4 (N.D. Ill. June 12, 2018) ("Unlike in *Bill of Lading*," contributory negligence sufficiently pleaded where "complaint does not 'actually make clear on [its] face that [EZ Stak's] products *do* have substantial non-infringing uses'" (quoting *Bill of Lading*, 681 F.3d at 1339)); *Conair Corp. v. Jarden Corp.*, 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014) (denying motion to dismiss where plaintiff alleged defendant's products were "not suitable for substantial non-infringing use" and did not undermine that assertion).

Because Cascades "pleads factual content that allows the court to draw the reasonable inference" that Evertz is liable for knowingly offering for sale and selling products containing the IntelliTrak feature which infringe the patents-in-suit and have no substantial noninfringing use, and because Cascades has done nothing in its complaint to contradict those assertions, the Court denies Evertz's motion to dismiss the contributory infringement claims. *Boucher*, 880 F.3d at 366 (quoting *Iqbal*, 556 U.S. at 678).

### D.    Willful Infringement

Finally, Evertz contends that Cascades' claims for enhanced damages fail because the complaint does not allege facts that plausibly constitute egregious conduct. An award of enhanced damages under Section 284 is "generally reserved for egregious cases of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). But conduct warranting enhanced damages has been described not only as "willful" or "egregious," but also as "wanton, malicious, bad-faith,

deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. In *Halo*, the Supreme Court abrogated the two-part test established in *In re Seagate Technology, LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) for consideration of enhanced damages. The Court held, among other things, that requiring a finding of objective recklessness in every case before a district court may consider enhanced damages was too rigid, and that requiring clear and convincing evidence of recklessness was too high an evidentiary standard for such an award. 136 S. Ct. at 1932.

It is unclear whether *Halo* affected the pleading standard for willful infringement in so doing. District courts post-*Halo* have applied differing requirements for pleading willful infringement, with some requiring a plaintiff to plead facts showing that the accused infringer engaged in egregious conduct, and others declining to do so. *Compare Finjan, Inc. v. Cisco Sys. Inc.*, 2017 WL 3748772, at *5 (N.D. Cal. June 7, 2017) (dismissing willful infringement claim where complaint failed to make sufficient factual allegations that defendant's behavior was "egregious . . . beyond typical infringement"), *and Jenkins v. LogicMark, LLC*, 2017 WL 376154, at *5 (E.D. Va. Jan. 25, 2017) (finding that "at a minimum," plaintiffs alleging willful infringement must plead facts "sufficient to support an inference 'plausible on its face' that the alleged conduct is of the egregious nature described in [*Halo*]"), *with Bio-Rad Labs. Inc. v. Thermo Fisher Sci., Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) ("At the pleading stage, it is not necessary to show that the case is egregious"), *Progme Corp. v. Comcast Cable Commc'ns LLC*, 2017 WL 5070723, at *12 (E.D. Pa. Nov. 3,

2017) (declining to dismiss post-suit willful infringement claim, based on allegation that defendant had knowledge of the patent and "persisted in its alleged infringement," as "further development of the record [could yield] evidence of egregious conduct"), and *Crypto Research, LLC*, 236 F. Supp. 3d at 688 (holding that with respect to willful infringement, "[t]he complaint adequately alleges that the defendants committed acts of infringement with full knowledge of the plaintiff's rights in its patents. That is sufficient.").[7]

The Court need not address the issue, because Cascades has sufficiently pleaded egregious conduct on Evertz's part. Cascades' claims for enhanced damages under Section 284 are identical but for the patent number to which each pertains, and allege:

> Evertz's infringement of the ['659, '723, or '945] Patent has been and continues to be willful and deliberate. Evertz has refused to respond in good faith to Cascades' notices and attempts to discuss the Cooper Patents or the possibility of licensing them. This failure to engage includes Evertz promising to send detail of its positions, but then failing to communicating [sic] again.

---

[7] District courts also differ on whether a claim for willful infringement would lie where the complaint provides the first notice of the patent and the alleged infringement. *Compare Progme Corp.*, 2017 WL 5070723, at *12 (willful infringement claim for enhanced damages may be premised on post-suit conduct); *T-Rex Prop. AB v. Regal Entm't Grp.*, 2017 WL 4229372, at *8 (E.D. Tex. Aug. 31, 2017) (same); *with Wis. Alumni Research Found. v. Apple, Inc.*, 261 F. Supp. 3d 900, 917-18 & n.6 (W.D. Wis. 2017) (*Halo* did not alter *Seagate* requirement that willful infringement claims be based on pre-litigation conduct); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 2017 WL 58572, at *6 (D. Nev. Jan. 4, 2017) (same). Because the Court finds that Evertz had sufficient knowledge of all of the patents-in-suit at least as of August 30, 2017, the Court declines to address this issue.

R. 1 ¶¶ 40, 53, 68. The allegations of Evertz's responses (or lack thereof) to Cascades' written communications belie any argument that it did not consider Cascades' communications to sufficiently notify it of its alleged infringement, and plausibly allege Evertz's ill intent. The Court finds Evertz's numerous promises and failures to respond to Cascades' communications generally—and the fact that it never denied that it was infringing—sufficient to support its claims for enhanced damages at this early stage. *See Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017) ("At a minimum, the discretion that *Halo* confers on district courts to award enhanced damages based on the nature of specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage.").

Despite Evertz's urging to the contrary, that Cascades contacted Evertz regarding patents other than those currently in dispute here does not affect the Court's conclusion. Whether Cascades can ultimately establish conduct sufficient to warrant an award of enhanced damages is more amenable to a motion for summary judgment after the parties have engaged in discovery. *See id.* ("It is possible that further development of the facts of this case may reveal that it is not an egregious case justifying enhanced damages, but at the pleading stage, especially in light of *Halo*, [plaintiff] has carried its burden"). Accordingly, the Court denies Evertz's motion to dismiss the enhanced damages claims.

## Conclusion

For the foregoing reasons, Evertz's motion to dismiss [38] is denied.

ENTERED:

_Thomas M Durkin_
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: January 11, 2019